## STATE v. GORHAM.

No. 5809. Decided October 13, 1937. (72 P. [2d] 656.)

*Gustin & Richards,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

HANSON, Justice.

Originally, the defendant, C. Gorham, was charged before the committing magistrate and by the information filed by the district attorney with the crime of forgery in two counts; the first count alleging that he forged a bank draft in words and figures as follows:

"The Continental National Bank of Salt Lake City
"Salt Lake City, Utah, Dec. 30, 1932
"At Sight Pay to the order of C. Gorham $19.50 Nineteen 50/100 Dollars
"Value Received and charge to account of with exchange.
"Sam L. Bringhurt,
Murray, Utah.
"To Continental Nat. Bank, Salt Lake City, Utah"

—by forging and counterfeiting the name of Sam L. Bringhurt. The second count charged him with uttering and passing said draft as genuine with intent to defraud, knowing the same to be false and forged. He was convicted on the second count, and appealed to this court from the judgment of conviction. The judgment was reversed by us and the matter remanded to the district court of Salt Lake county for a new trial. *State* v. *Gorham,* 87 Utah 86, 48 P. (2d) 447.

Some time after the former appeal and before the time of the second trial, a letter "s" had been inserted by pen and ink in the name "Bringhurt" as it appeared in the information in both counts, so that the name read "Bringhurst" wherever it appeared in each count. At the commencement of the retrial of the case, counsel for defendant called the court's attention to this ink insertion. Upon motion of the prosecution these ink insertions were ordered stricken so that the information was restored to its original wording and lettering. No exception was taken to this ruling of the court.

Before the ink letters "s" were stricken, defendant moved for a dismissal of the first count on the ground that at the former trial defendant had been convicted on the second count only, and could not be retried on the first count with-

out being put in jeopardy twice on the first count, and the verdict of the jury on the first trial was res adjudicata as to the first count. Defendant also moved for a dismissal of the entire information on the ground that by the insertion of the letter "s" in ink, as above indicated, the information had been so amended as to be at variance with the complaint before the committing magistrate and with the information upon which defendant had been arraigned and to which he had pleaded not guilty. The trial court denied both motions.

After the prosecuting attorney had made his opening statement to the jury, defendant moved for a dismissal on the ground that such statement did not disclose facts sufficient to constitute a public offense, in that the name charged as having been forged was the name "Sam L. Bringhurt," whereas the prosecuting attorney stated that the state would prove that a forgery was committed by having Samuel E. Bringhurst testify that the signature "Sam L. Bringhurt" was not his signature.

Just before the state rested its case, it was permitted to file an amended information charging defendant with the crime of forgery in two counts. Only as to the first count did the amended information differ in any particular from the original information; the second count in both the original and amended information being exactly the same. The amendment to the first count charged that the defendant "did forge and counterfeit the name and signature of Samuel E. Bringhurst by then and there signing the name Sam L. Bringhurt to said draft"; that the name Sam L. Bringhurt on the draft and Samuel E. Bringhurst represented the same person, and in signing the name Sam L. Bringhurt to said draft, defendant intended to sign the name Samuel E. Bringhurst.

Under the forms of verdict submitted to the jury, they were permitted to find defendant guilty of forgery as charged in the first count, or guilty of forgery as charged in the second count, or not guilty. The jury brought in a verdict finding defendant guilty of forgery as charged in

the second count of the information. Defendant appeals from the judgment of conviction entered on such verdict. We have detailed the proceedings had during the trial, as defendant relies upon errors which he asserts occurred through the action of the court in such proceedings. We shall proceed to dispose of the questions raised by defendant, and refer to the evidence as we proceed.

Defendant first contends that the court, by permitting the state to amend its information after the trial had commenced, violated sections 7, 12 and 13 of article 1 of the Constitution of Utah, in that said amendments charged an offense different from that upon which the defendant had been arraigned or had had a preliminary hearing. It is claimed that striking the ink letter "s" from the name "Bringhurst," where such name appeared in the information, was an amendment having the effect of changing the crime charged. There is nothing in the record to show that the insertion by ink of the letter "s" had been done pursuant to an order of the court by way of amendment. So far as appears, the insertion of that letter was without authority. The removal of that letter simply restored the information to its original condition, and cannot be said to be an amendment. Defendant had been arraigned and had his preliminary hearing on the charge contained in the information as it stood with the letter "s" stricken out. No constitutional right of defendant was violated by restoring the information to its original condition.

It is argued that permitting the state to amend the information to allege that defendant was guilty of forgery by forging the name of Samuel E. Bringhurst by signing the name Sam L. Bringhurt, that Samuel E. Bringhurst and Sam L. Bringhurt represented the same person, and that defendant in signing Sam L. Bringhurt intended to sign the name Samuel E. Bringhurst, changed the offense and the nature of the offense charged. We deem it unnecessary to enter into any discussion of the question

thus raised, since this amendment affected the first count only, and the jury specifically found, by the form of its verdict, defendant guilty of the crime of forgery only as charged in the second count. The defendant, therefore, was not convicted of having falsely forged the draft either as originally alleged or as alleged under the amended information. To find defendant guilty under the second count, it was not essential that defendant should have personally affixed the forged name to the draft. *State* v. *Allen,* 116 Mo. 548, 22 S. W. 792. Under section 8270, Comp. Laws Utah 1917, now section 103-24-1, R. S. Utah 1933, the crime of forgery as there defined may consist of the making of the false instrument or of the passing of an instrument known to be false; or both making and passing such instrument. *State* v. *Jones,* 81 Utah 503, 20 P. (2d) 614. The doing of either of such acts constitutes the crime of forgery, and even though the proof fails to show that the defendant personally falsely forged the instrument, it may be sufficient to show the passing of an instrument known by him to be false or forged, and this would constitute the crime of forgery. The different acts defined by the statute as constituting forgery may be alleged in the same count or in separate counts. *State* v. *Jones,* supra; *State* v. *Green,* 89 Utah 437, 57 P. (2d) 750. A finding of guilty of the act described in the second count is not a finding of guilty of the act described in the first count, and does need a finding of guilty of the act charged in the first count to support it. So far as the first count and any prejudice to defendant from the amendment thereof are concerned, defendant cannot be heard to complain on this appeal, as he was not convicted under said count. "A conviction and judgment upon one of several counts with no verdict upon the others, is an acquittal as to the other counts." 16 C. J. 1107. We think such rule is especially applicable where, as here, the jury were given separate forms of verdicts covering each count. It is clear that the jury did not consider defendant guilty as charged in the first count.

What has been said disposes of defendant's contention that the court erred in denying his motion to strike the first count and his motion to dismiss the entire information on the ground of variance between the information as filed and the complaint upon which he was held for trial. It likewise disposes of defendant's objection to the third instruction of the court to the jury defining the crime charged in the first count, as amended. As to defendant's motion to dismiss the information after the opening statement had been made to the jury by the prosecuting officer, we have examined that statement and are convinced that the trial court committed no error in denying said motion.

Defendant next urges that the verdict of the jury is against the law as declared by the court in its instructions Nos. 7 and 8. Instruction No. 7 informed the jury that they could not convict defendant of the crime charged in the first count unless they found that defendant wrote the said draft and was not authorized to write and execute the same by Sam L. Bringhurt. Since defendant was not convicted of the crime charged in the first count, it cannot be said that the verdict of the jury is against the law as contained in instruction No. 7, and we need not further consider that instruction.

By instruction No. 8 the jury were instructed that before they could find defendant guilty under the second count alleged in the information they must first find that said draft was a "forged instrument and was not drawn, made or executed by or with the consent of Sam L. Bringhurt. * * * *" It is argued that there is no evidence to support a finding that said draft was not executed by or with the consent of Sam. L. Bringhurt.

The evidence shows that some time prior to December 31, 1932, the defendant came to the place of business operated by the Goodrich Silvertown Company, at 131 East First South street in Salt Lake City, and purchased some antifreeze for his automobile, and left a tire to be vulcanized.

He returned on the date above mentioned, and gave the draft in question in payment of the antifreeze and the tire. As to what was said and done at the time he gave the draft, the state's witnesses testified as follows: Arthur C. Knight testified that defendant stated that the Sam Bringhurst, whose name was on the check (draft), was in the automobile business in Murray, and was in the bishopric of one of the wards in Murray. Statements were made by those present that they thought Bringhurst was doing a good job down there in the automobile business, and he was generally admired and known by the boys in the group present during the conversation. Defendant indorsed the back of the draft with a fountain pen which he produced from his pocket. Mr. Knight obtained the money from another employee, Mr. Brandley, for the draft, and gave defendant the change, amounting to something over $15. The draft was approved for acceptance by Mr. Pearson, service manager for the Goodrich Silvertown Company.

Mr. Brandley, who was in charge of the gasoline department, testified he heard the conversation between defendant and Pearson. When defendant handed Pearson the draft, the latter stated: "This is Sam Bringhurst at Murray. I know him very well." Defendant agreed that he was the Mr. Bringhurst, and also stated that he was a bishop or official in the Mormon Church. Pearson then stated he knew Bringhurst, that he was a successful business man, and that he had no hesitancy in cashing this check.

Mr. Bradford, another employee of the Goodrich Silvertown Company, testified that defendant told Pearson that the draft was that of Mr. Bringhurst from Murray. Mr. Pearson testified that he O.K.d the check and defendant talked about the man in the automobile business. The witness thought it was Bringhurst's check, and stated in the conversation with defendant that it was Samuel L. Bringhurst, the automobile dealer at Murray. Pearson further testified he had known Samuel L. Bringhurst who had been in the automobile business since 1925; that his name was Samuel L.

and not Samuel E. He did not scrutinize the check closely. The conversation relative to Bringhurst took place before the check was cashed.

The auditor employed for the past twenty-six years by the Continental National Bank & Trust Company, on which bank the draft was drawn, testified that during December, 1932, and January, 1933, there was no account, and that there had never been an account in that bank, in the name of Samuel L. Bringhurst or Sam L. Bringhurt, or in the name of Samuel E. Bringhurst.

Samuel E. Bringhurst testified that he had lived at Murray, Utah, most of his life; that he had been the bishop of the Murray First Ward continuously since 1928; that from 1922 until March, 1932, he was engaged in the automobile business in Murray; that he knows no person residing in Murray or its vicinity by the name of Sam L. Bringhurt or any one by the name of Bringhurt; that no one by the name of Bringhurst, other than himself, has been engaged in the automobile business in Murray; that the signature "Sam L. Bringhurt" on the draft is not his (the witness's) signature; that he did not authorize any one to affix that signature or to sign his name to any draft or check, and did not authorize the defendant to sign his name to any negotiable instrument; that he has known defendant since 1930. The fair inference from his testimony is that no one by the name of Bringhurst has held the church office of a member of a bishopric at Murray, Utah, except his brother, Henry Bringhurst.

The defendant takes the position that testimony of Samuel E. Bringhurst would not permit the jury to find that Sam L. Bringhurt did not sign or consent to the signing of the draft as required to be found by the jury under instruction No. 8, above referred to, in order to find defendant guilty under the second count. If the evidence adduced by the state is not sufficient to establish that the Samuel E. Bringhurst who testified is the same person as the person whose name appears on the draft, then it would

seem to follow, so far as the proof before us is concerned, that the name appearing on the draft would be that of a fictitious person. Under the rule as it generally prevails, it would make no difference, so far as a conviction of forgery is concerned, whether the name on the questioned instrument is that of a real or fictitious person. 26 C. J. 927; *People* v. *Browne,* 118 App. Div. 793, 103 N. Y. S. 903 (affirmed 189 N. Y. 528, 82 N. E. 1130) ; note 9 A. L. R. 407. In this state, however, we have, besides the general statute defining forgery, sections 103-24-1 and 103-24-4, R. S. Utah 1933, imposing for forgery a penalty of imprisonment in the state prison for a term of not less than one year nor more than twenty years, and another section, 103-24-7, which provides that:

"Every person who makes, passes, utters or publishes, with intention to defraud any other person, * * * any fictitious bill, note or check purporting to be the bill, note, check or other instrument in writing for the payment of money or property of some bank * * * or individual when in fact there is no such bank * * * or individual in existence, knowing the bill * * * to be fictitious, is punishable by imprisonment in the state prison for not less than one nor more than ten years."

It will be noticed that the penalty for the crime covered by the section quoted is less than the penalty fixed generally for forgery under section 103-24-4. Our statutes are similar to sections 470, 473, and 476, Penal Code, originally in force in California. It was held in the case of *People* v. *Elliot,* 90 Cal. 586, 27 P. 433, 434, that a conviction for forgery of a check under section 470 could not be sustained where facts disclosed that a fictitious name had been used; that the charge should have been under section 476. The court there points out that the facts before it did not disclose any ground for the application of the doctrine of idem sonans. The court said:

"The law appears to recognize a distinction between forged instruments purporting to have the signature of a person in existence, and those where the signature is purely and entirely fictitious. * * *

section 470 of the Penal Code is quite broad in its terms, and, in the absence of said section 476, it might probably be construed broad enough to include fictitious instruments as referred to in said section; but, the legislative mind having been directed specially to that class of instruments with reference to the offense of forgery, it would seem the act of making or passing a fictitious check could only be prosecuted when brought within the requirements and conditions of that section."

The rule thus announced was followed in *People* v. *Eppinger*, 105 Cal. 36, 38 P. 538. In *People* v. *Terrill*, 133 Cal. 120, 65 P. 303, the above cases were approved, but the court held that the act of passing or making a fictitious check, as prescribed in section 476, was a forgery, but it could be prosecuted only when the allegations of the information showed an offense under that section. In *People* v. *Chretien*, 137 Cal. 450, 70 P. 305, 307, the court decided that section 476 applied only to the instruments therein specifically mentioned, and that the making of a deed in the name of a grantee not in existence was not covered by section 476, but such act should be prosecuted under section 470. The court said:

"We now hold that the forgery of any fictitious instrument mentioned in section 470 and not mentioned or included in section 476, falls within the former section. We further hold that the information brought under section 470 is sufficient without alleging that the deed was fictitious."

Under the California law, as thus construed, the making and passing of some fictitious documents would be forgery under the general forgery definition, while, as to other kinds of documents, such acts would fall under a special statute requiring the allegation of certain facts in the information not required by the general forgery statute. This peculiar situation was remedied within a short time after the rendition of the opinion in the case last cited by the Legislature adding the word "fictitious" in the definition of forgery. Thereupon, the court in *People* v. *Jones*, 12 Cal. App. 129, 106 P. 724, held that the crime of forgery could be committed

by signing the name of a fictitious, as well as a real, person to any of the instruments enumerated in section 470.

In the case of *Moncref* v. *State*, 33 Wyo. 192, 236 P. 1037, the Wyoming court concluded that the signing of a fictitious name to a check was a forgery under the general forgery statute, notwithstanding a special section of the statutes covering fictitious documents; that the latter section did not describe a crime distinct from forgery as defined at common law. The case of *State* v. *Stegner*, 276 Mo. 427, 207 S. W. 826, is cited and relied upon.

It is difficult to understand why a special statute should be enacted to apply to certain fictitious documents when the language of the statute defining forgery is broad enough to include the making and uttering of fictitious documents, and names the very documents covered by the special statute. It is also difficult to understand why a lesser penalty should be provided. But, while the purpose of the enactment may not be clear, it would appear that the Legislature intended that where a fictitious bill, note, check, or other instrument for the payment of money was involved, the prosecution should proceed under section 103-24-7 and not under section 103-24-1, notwithstanding the crime would still be called "forgery." In any prosecution for the making and passing of an instrument specified in section 103-24-7, the prosecuting officers, therefore, must initially consider whether the instrument involved will prove to be fictitious or not. Likewise, in the trial for forgery, this same question might arise depending upon the evidence adduced.

In the case before us no one by the name of Sam L. Bringhurt was produced to prove the signature on the draft a forgery. The identity of the person answering to the name of Sam L. Bringhurt was not established by that kind of proof. Did the proof, therefore, fail to show that the name of a real person in existence had been affixed to said draft without his having written it or authorized or consented to its being written, so as to bring the crime, if any, under section 103-24-7 and not section 103-24-1?

The general rule is that identity of person is presumed from identity of name, and the burden is on him who seeks to dispute this presumption to rebut it. *McKinley Bros.* v. *McCauley*, 215 Cal. 229, 9 P. (2d) 298; *In re* *Orange*, 272 N. Y. 61, 4 N. E. (2d) 417; 22 C. J. 92. Likewise, the rule is that names that have the same pronunciation so as to make applicable the rule of idem sonans, prima facie, designate the same persons. 19 Cal. Jur. 530. In *Napa State Hospital* v. *Dasso*, 153 Cal. 698, 96 P. 355, 356, 18 L. R. A. (N. S.) 643, 15 Ann. Cas. 910, it was decided that the names "Dasso" and "Tasso" were idem sonans. The court uses the following language:

"Though a name be inaccurately written, still, if, when pronounced it conveys to the ear a sound practically similar to the correct name when pronounced, the rule of idem sonans obtains, and identity of person will be presumed from similarity of sound in the pronunciation of the names."

See, also, *Robben* v. *Benson*, 43 Cal. App. 204, 185 P. 200; *State Board of Medical Examiners* v. *Buettel*, 102 N. J. Law 74, 131 A. 89; *Johnston* v. *State*, 65 Fla. 492, 62 So. 655; *Rhodes* v. *State*, 74 Fla. 230, 76 So. 776.

In the last case cited it is stated that the rule of idem sonans

"should not be restricted to mean that the sounds produced by dissimilar spelling must be identical or indistinguishable from each other, but that they should be sufficiently alike in sound as not readily to suggest a difference to the mind of the hearer."

The case of *Selby* v. *State*, 161 Ind. 667, 69 N. E. 463, involved a prosecution for forgery. Speaking upon the subject now under consideration, the court said:

"We concede it to be well established in criminal prosecutions for forgery that the name charged to be forged must be proved as alleged in the indictment or information. * * * It is not essential, however, that the names be spelled in the same way, or that they be correctly spelled. If substantially the same sound is preserved, a variant or-

thography will make no difference. The test always is, are the names as spelled idem sonans—have the same sound?"

From what has been said it must follow that whether the jury were justified in finding defendant guilty under the second count upon proof that Samuel E. Bringhurst did not sign or consent to the signing of the draft, under an instruction that to find defendant guilty they must find that Sam L. Bringhurt had not signed or consented to the signing of said draft, would depend upon whether the name Sam L. Bringhurt on the draft and the name Samuel E. Bringhurst, under the evidence, were idem sonans so that the person named on the draft could be presumed to be the witness Bringhurst. The evidence is uncontradicted that defendant represented and led the employes of the Goodrich Silvertown Company to believe that the draft was that of a Mr. Bringhurst who was in the automobile business in Murray, Utah, and was the bishop of one of the wards of the Mormon Church in that city. The draft itself gave Murray, Utah, as the address of the maker. Such representation and such address narrowed the identity of the maker of the draft to narrow limits. In a community the size of Murray, the number of men by the name of Bringhurst or Bringhurt that would fit that description would be exceedingly limited. These facts would tend to strengthen the presumption of identity of persons arising from the rule of idem sonans where the particular party thus designated was produced and testified and it appeared unlikely that any other person existed who could fill the description given. The evidence is clear that defendant did not pass the draft of a fictitious person, but passed it as the genuine draft of a person in existence known both to himself and the parties with whom he dealt.

The name on the draft and the name of the witness Bringhurst were not so different as to exclude the rule of idem sonans. The first name "Sam" on the draft and the name "Samuel" of the witness are so commonly used as being the same name that no material variance

arises as to that part of the name. The initial "L." in the one case and the initial "E." in the other are likewise not such a variance as to be material or prejudicial. 2 Wharton's Crim. Evid. 1850, § 105; *People* v. *Smith*, 103 Cal. 563, 37 P. 516. Although such difference properly is to be considered in testing the probative force of the inference of identity arising from similarity in names. The main difference between the names in this case is the omission of the letter "s" in the surname on the draft and its inclusion in the true name of the party represented to have made the draft.

We have examined a large number of cases involving the application of the rule of idem sonans. In the cases hereinabove cited, the following names were held to be idem sonans as a matter of law: "Dasso" and "Tasso," *Napa State Hospital* v. *Dasso*, supra; "Veike and "Vieke," *Selby* v. *State*, supra; "R. S. Southerland" and "R. G. Southerland," *People* v. *Smith*, supra. In *People* v. *Gormach*, 302 Ill. 332, 134 N. E. 756, 29 A. L. R. 1120, the court held the names "Weinstraub" and "Weintraub" were idem sonans. In *People* v. *Harrison*, 14 Cal. App. 545, 112 P. 733, it was held that in view of the rule of idem sonans there was no variance between the names "William Strandberg" and "William Elmer Standberg" as would affect the validity of the judgment of conviction. The case of *Santolini* v. *State*, 6 Wyo. 110, 42 P. 746, 71 Am. St. Rep. 906, involved a conviction for uttering a forged bank check. The name signed to the check was "G. W. Ewareeds." The information charged the uttering of a check purporting to be that of "G. W. Edwards." G. W. Edwards testified the check was not his, and the signature thereon was not his. The court held that the difference in names was not "so clear and marked as to render it a palpable variance as a matter of law." In *Marshall* v. *State*, 116 Neb. 45, 215 N. W. 564, 567, it was held that the variance between the name "H. A. Timnernan" on the note and the name "H. A. Timmerman" intended as the maker did not prevent the application of the rule of idem

sonans, and did not invalidate a conviction for forgery and uttering a forged note. The court said:

"The names are practically idem sonans, and the person writing the name to the forged note intended that it should be taken for the name 'Timmerman,' and having written it with that intention in such a way as might deceive a person of ordinary prudence, his fraudulent purpose and felonious intent to commit a forgery are as clearly manifested as they would have been if the spelling had been entirely correct."

We think that the names "Bringhurt" and "Bringhurst" are of such similarity in sound that the doctrine of idem sonans is applicable. Sam L. Bringhurt and Samuel E. Bringhurst are shown to be the same person when that doctrine is applied, and, in the absence of any proof by defendant to the contrary, there was sufficient evidence under all of the facts upon which the jury could find that "Sam L. Bringhurt" had not signed or consented to the signing of the draft in evidence. The only evidence in behalf of the defendant was given by Robert F. White, who testified the defendant had made him acquainted with a Sam Bringhurt in Reno, Nev. Such testimony would have no bearing on the identity of the person whose name was on the draft and there represented as being at Murray, Utah, and in nowise contradicts the effect of defendant's representations as to the identity of the maker of the draft when he passed the same.

While we think that the rule of idem sonans is applicable under the facts of this case as a matter of law, and must, therefore, conclude that the jury could not have been misled in arriving at its verdict because of the dissimilarity in names, still, if it be contended that there was such dissimilarity as to raise a question of fact as to whether the rule should be applied, defendant cannot now complain that that issue was not presented to the jury. An instruction covering the rule of idem sonans would have been proper and should have been given if requested. But under the authority of the last two cases above cited, defendant, having failed to request an instruction covering that rule,

cannot complain of the omission for the first time upon appeal. In addition the court instructed the jury by instruction No. 10 to take into consideration all the facts and circumstances of the case disclosed by the evidence in determining the identity of Sam L. Bringhurt. It is fair to conclude that the jury, in view of instruction No. 8, found Sam L. Bringhurt to be in fact Samuel E. Bringhurst.

Defendant complains of the court's instruction No. 4 which defines the elements making up the crime charged in the second count, for the reason that there is no evidence that the instrument was a forged instrument. This objection is disposed of adversely to defendant's contentions by what has already been said. Likewise, in view of the conclusions to which we have come, there is no merit to defendant's exception to the giving of instruction No. 10. The identity of Sam L. Bringhurt had a most material bearing upon the question of defendant's guilt or innocence under the allegations contained in the second count, and in determining that question the jury were entitled to consider all the facts and circumstances disclosed by the evidence.

Defendant assigns as error the reception of certain evidence by the court objected to by defendant. The state was permitted to read in evidence the testimony of Elias A. Smith, a handwriting expert, given at the former trial, to the effect that the handwriting on the face of the draft alleged to have been forged, including the signature "Sam L. Bringhurt" was the same as the indorsement thereon by defendant and the writing appearing on another draft admitted in evidence as a sample of defendant's handwriting. It was stipulated, at the time the state asked leave to read this testimony, that Smith was in California and therefore not available to testify in person. However, it is objected that no foundation was laid for reading this testimony by a showing of due diligence on the part of the state to subpoena Smith and have him present. A deputy sheriff testified he had left a subpoena with a stenographer working in Smith's office at the state capitol on a Friday

evening three days before the time set for the trial. The stenographer informed the deputy that Smith would not be back to the office that day, but she would see that he got the subpoena. There was also evidence to show that an effort had been made the day previous to the tender of the testimony of Smith at the former trial to locate and subpoena him and information was then received that he was in California.

When it was stipulated that Smith was absent from the state of Utah, we think this testimony given at the former trial in the district court, a court of record, could be read in evidence by virtue of section 105-45-3, R. S. 1933, which provides:

"Whenever in any court of record the testimony of any witness in any criminal case shall be stenographically reported by an official court reporter and thereafter such witness shall die or be beyond the jurisdiction of the court in which the cause is pending, either party to the action may read in evidence the testimony of such witness, when duly certified by the reporter to be correct, in any subsequent trial of, or proceeding had in, the same cause, subject only to the same objections that might be made, if such witness were upon the stand and testifying in open court."

See *State* v. *Greene*, 38 Utah 389, 115 P. 181. The above section by its terms does not require any showing other than that the witness is dead or is beyond the jurisdiction of the court in which the cause is pending to permit the reading in evidence of such testimony. There is nothing in the record to indicate any bad faith on the part of the state in not procuring the witness to be present, or that the prosecution had anything to do with his absence from the state. If it be assumed that some showing of diligence to obtain and have the witness present in person is required, inferentially still we are not prepared to say there was such a failure by the state to show diligence in that regard as would require us to hold that the deposition should not have been received in evidence.

Objection was made to the reading of Smith's opinion that the handwriting on the face of the draft was the same as the handwriting contained in the indorsement and in another instrument admitted to be in defendant's handwriting, upon the ground that no proper foundation had been laid qualifying him to express an opinion. The evidence as to his qualifications shows that the examination of questioned documents is a part of his business; that he has made a study of handwriting; that he has qualified in the district court and city court and other courts as a handwriting expert. While the evidence as to his qualifications is somewhat meager and does not disclose the details of his experience, we think that sufficient was shown to sustain the trial court's discretion in admitting the opinion in evidence. By its verdict, the jury acquitted defendant of the charge that he had forged the signature affixed to the draft as the maker, so that, apparently, they were not influenced by the opinion read into the evidence. The verdict finding defendant guilty under the second count would be sustained under the evidence regardless of whether the defendant affixed the signature to the face of the draft or not.

Defendant complains that the trial court erred in overruling his objections to certain questions asked Samuel E. Bringhurst. The witness was asked whether the signature on the draft was his; whether he authorized or consented to any one signing the signature thereon; whether he had ever authorized or consented to any one signing his name to a draft or check. We think all of this testimony was relevant and material. The evidence disclosed without dispute that when the draft was presented, defendant represented it to be the draft of the witness Bringhurst. Under such circumstances, the state was entitled to show that Bringhurst had had nothing to do with the making of the draft, and had not authorized or consented to its making. Indeed, it was because Bringhurst had not testified at the first trial that he had not authorized or consented to the signing of the maker's name to the draft that we reversed

the first conviction and granted a new trial. Likewise, there is no merit to defendant's objections to questions asked Bringhurst calculated to show that he did not know any person residing in Murray or its vicinity by the name of Sam L. Bringhurt. Such questions were material to show that there was no person, except the witness, fitting the representations made by defendant when he presented the draft and would tend to give strength to the presumption of identity of persons arising by the application of the rule of idem sonans.

During the cross-examination of one of the state's witnesses, the prosecution interposed objections to certain questions. Counsel for defendant asked, "Do you want me to state my theory before the jury?" The prosecuting attorney replied, "I don't think it is necessary." Defendant's counsel stated, "I want to advise the court of my theory." To this the prosecution replied, "Let the defendant tell the theory later on." It is claimed this was misconduct as a statement by the prosecuting attorney to let the defendant take the stand and tell his story, and is tainted with the same vice as a comment on the failure of the defendant to testify in his own behalf. While the statement by the prosecuting attorney was not called for, we cannot see that it was misconduct to make it, or how it could be construed to have the same consequences as a comment on defendant's failure to testify. It was made while the state was putting on its case and before any one could have any intimation that defendant was not going to testify in his own behalf.

The defendant assigned as error the court's refusal to give certain requested instructions. There is no discussion in his brief of this assignment; defendant being content with including such assignment of error under a list purporting to contain, "Errors Relied On." We have examined these requested instructions, and are of the opinion there is no merit to defendant's position in relation thereto. Likewise, de-

fendant lists as "Errors Relied Upon," without any discussion the refusal of the trial court to grant a new trial.

We are satisfied, as already indicated, that the evidence was sufficient to justify and sustain the verdict of the jury, and that the record discloses no errors which would justify a new trial. The judgment is affirmed.

FOLLAND, C. J., and MOFFAT, J., concur.

WOLFE, Justice (concurring).

I agree that there was no prejudice in the failure to dismiss the first count of the information before any evidence was taken, or at all, in view of the fact that the jury acquitted on the first count. But I place my conclusions on reasons other than those stated in the prevailing opinion. I think that if there was any evidence introduced in support of the first count which was not material to the second count, or if there were any instructions in regard to the first count not material to the second count, and either such evidence or such instructions might have influenced the jury in finding the defendant guilty on the second count, the case should be reversed. But in this case I do not find that any evidence introduced in support of the first count was not material in support of the second count.

Certainly, the evidence that C. Gorham, the defendant, was the payee on the check was material to either count. The evidence that Samuel E. Bringhurst had not signed the check or authorized the signature was material on the second count because on the second count it was necessary to prove as one element that the check was a forgery. I shall later discuss the confusion between the names "Sam L. Bringhurt" and "Samuel E. Bringhurst." Evidence that Gorham passed the check and obtained money or goods for it certainly was as material to the second count as to the first. Perhaps more so, because in order to prove the first count only forgery with intent to pass would have to be proved. Usually the intent is proved by the actual act of passing, but not neces-

sarily so. The evidence as to the conversation between defendant and the witnesses at the service station was as material to the second count as to the first, as will be shown hereinafter.

We now come to the only remaining evidence, and that is the evidence of Elias A. Smith, the expert, to the effect that the person who wrote the name "C. Gorham" on the back of the check was the same person who wrote the name "Sam L. Bringhurt" on the front of the check. This was very material to prove that Gorham himself signed the name "Bringhurt." But it was also material to prove his knowledge and the fact that the man whose name appeared on the check as maker, whether Bringhurst or Bringhurt, was not the man who signed the check. By such proof could be established an element in the second count, to wit, that C. Gorham, payee and indorser of the check, must have had knowledge that the check was a forgery. Knowledge that the check was a forgery when he uttered it could not be proved in any better way than by proof that he forged the check himself. Consequently, if the first count had never appeared in the information, then all the evidence introduced would have been introduced in support of the second count, and would have been material.

In the case of *State* v. *Jenson*, 74 Utah 527, 280 P. 1046, 1049, two counts were stated; one for false pretenses, and the other for larceny by trick. The second count was withdrawn from the consideration of the jury after all the evidence was in. It was stated in that opinion as follows:

"It is quite certain in this case that every bit of evidence which would be required to establish the trick, artifice, or device necessary to prove and actually constituting the larceny could competently be introduced to support the false pretense. In fact it would seem that exactly the same evidence necessary to establish the larceny by artifice would be the evidence required to establish the false pretense for the simple reason that the artifice which constitutes the larceny in this case is the false pretense alleged in the first count."

While the language above quoted was used in connection with the determination of the test as to whether, if two offenses had been improperly joined, there was prejudice, the language might as well have been used to show that there had been no prejudice by joining a count or an offense and withdrawing the same from the jury if all the evidence in support of the withdrawn charge or offense was material to support the remaining count or charge. In the instant case, the connection is very much closer, because the two counts contained in the information are simply different methods of committing forgery.

I cannot see that either instructions Nos. 3, 5, or 7, which pertain to the first count, could have in any way prejudiced the defendant as to the second count, because they all pertained to specific things which the court said the jury must find before they could convict the defendant under the first count. And the fact that the jury did not find him guilty of the first count would show that they could not have been influenced adversely by such instructions as to the first count. I find nothing in these instructions which could possibly carry over a hint or suggest to the jury that they could find the defendant guilty under the second count. When the court told the jury that they must find certain elements in order to convict under the first count, and they did not convict under that count, it must be presumed that they did not find those elements. Consequently, it cannot be presumed that they took into account those elements which they found to be wanting to convict under the first count in order to determine that the defendant was guilty under the second count. Such leads to an absurd conclusion. Therefore, I must agree with the prevailing opinion that the effect in this case of a finding of not guilty on the first count was exactly the same as a withdrawal from the jury of consideration of a count in the information after the evidence and before submission to the jury, or before evidence introduced, or in fact before the case was tried.

As to the statement by the state's attorney, assigned as misconduct and as ground for a mistrial, I agree that it was not sufficiently serious for the declaring of a mistrial or for reversal. I agree that it was quite unnecessary and improper, but I do not quite see how the imputation could be carried to the jury that it was incumbent upon the defendant to explain his own theory at the risk of having the jury presume against him. It seems to me that counsel for the defendant gives too much effect to that remark of the prosecuting attorney. From the exchange of remarks by counsel in the courtroom, it appears to me that the remark of the district attorney was thoughtless, offhand, and not intended to and did not convey in any way the imputation which counsel contends it did.

In attacking the more difficult problems presented by this case, it appears to me that neither the prevailing opinion nor the dissenting opinion of Mr. Justice LARSON has given enough or any weight to an outstanding fact in this case, to wit, the fact that Gorham, the man accused of uttering the check, was also the payee on the check. It seems to me that this adds great significance as compared to the case where a more remote indorser is accused of uttering the check. It seems to me we can start out with the essential proposition that the jury could conclude that Gorham, who was the payee on the check, must have known either the identity of the person whose name purported to be on the check or the identity of the person who it was intended to represent had signed the check, or the fact that no such person who had presumptively signed the check existed. It is possible to conceive of a set of circumstances where a payee of a check might receive it not knowing the man who had signed it and not knowing any reason why such a man would make out a check to him, but common sense teaches us that most men do not have checks made out to themselves by men whom they do not know or with whom they have had no transaction. In other words, the fact that Gorham, the indorser of this check, was also the payee is some evi-

dence from which the jury could infer that Gorham had knowledge as to whether the check was a good or a bad check, and up to that point we do not have to consider whether it is a forged or a fictitious check. Therefore, the statement is probably correct in the prevailing opinion that the evidence of Elias A. Smith, while material to prove knowledge of forgery on the part of Gorham, was not necessary because there was other evidence.

We now come to the question as to whether the jury could infer from the fact that Gorham was the payee that he knew that the name Sam L. Bringhurt was intended by the person who wrote it there to be "Samuel E. Bringhurst." Perhaps such inference could not be drawn, but there is other evidence to supply the element that Gorham not only knew who purported to sign the check or whether it was a fictitious person, but that he knew that the name "Sam L. Bringhurt," whoever placed it there, was intended to stand for and represent "Samuel E. Bringhurst." I think this evidence is supplied in the conversation between the defendant and Pearson, overheard by Knight and Brandley. It is quite true that the evidence is not specific as to the exact conversation, and it is difficult to know whether the witnesses are stating the substance of the conversation or making their own interpretations of what went on; but from all the evidence in that regard it seems quite clear that the defendant conveyed and intended to convey the impression that the signer of the check was Samuel E. Bringhurst. The fact that some one else may have assumed that and mentioned it, and this brought it to his attention, makes no difference if he, being the payee on the check and therefore presumed to know the person with whom he must have had the transaction out of which the check grew, used the vehicle of that assumption on the part of the person talking to him in order to represent that the name "Sam L. Bringhurt" stood for "Samuel E. Bringhurst." It is not a mere matter of acquiescence. We must keep in mind always that the jury could infer that Gorham, the payee, must have known who the per-

son was whose name purported to be signed on the check, or that he was a fictitious person; this for the reason, as said before, that the evidence would make a prima facie case that the payee of the check, having the check in his possession, must have knowledge of who the person whose name appeared on the check was, or that he was a fictitious person.

Without more, however, it would be impossible to infer whether the payee knew that the person whose name appeared on the check was intended to be a fictitious person or whether it was a forgery of a real person's name. But Gorham supplies the evidence from which the jury may make the choice by his conversation overheard at the service station. Consequently, it seems to me that we have sufficient evidence that Gorham knew that the check was not the check of Samuel E. Bringhurst, together with sufficient evidence that he knew the check was intended to be considered and taken for the check of Samuel E. Bringhurst, and that he knew the name Sam L. Bringhurt was intended for the name of Samuel E. Bringhurst, and that Samuel E. Bringhurst had not signed or authorized it. Thus it seems to me we have sufficient evidence to make out a prima facie case of uttering a forged, rather than a fictitious instrument.

It seems to me that where the evidence shows that a person actually intended to forge the name of an existing person, but spelled it wrongly, it comes under the section regarding forgery. By the same token, where a person utters an instrument knowing the name thereon to have been intended to be the name of an existing person, he is guilty of forgery. As stated in the case of *People* v. *Elliot*, 90 Cal. 586, 27 P. 433, 434,

"The law appears to recognize a distinction between forged instruments purporting to have the signature of a person in existence, and those where the signature is *purely and entirely fictitious*." (Italics added.)

Certainly, where there is evidence that the person accused expressed himself in such a way that he must be presumed

to have known whether the purported signature of the maker of the instrument which he uttered purported to be the signature of a person in existence rather than of one who was purely and entirely fictitious, even under the above case of People v. Elliott, the case might have been held to have come under the forgery statute rather than the statute against the issuance and utterance of fictitious instruments. Especially should it be so held where, as stated in the Elliot Case, the forgery statute might be construed broad enough to include fictitious instruments were it not for the fact that there was a special statute on the making and uttering of fictitious instruments. I think it is quite important that we construe the laws wherever possible so that they are workable. If the changing of a letter or the wrong spelling of a name intended to be the name of an existing person should take it out of the forgery statute, then it seems to me by the same token a person accused of uttering a fictitious check might defend on the ground that he knew that the name which appeared as the maker of the instrument represented an existing person. It seems to me this would leave the law in a precarious state. The district attorney could not tell which way the defendant would jump until after it was too late, and he could escape in either case by simply making his evidence suit the crime which the district attorney had been unfortunate enough not to charge. I do not mean to say that it can be shown by evidence that any name signed to an instrument was supposed to represent an existing person. It is there that I think the doctrine of idem sonans applies. There must be such similarity in the names that a wrongly spelled name may be representative of the right name and that the names sound the same. I do not think that it could be shown that a person who put the name of Smith on a check intended to forge the name of Jones. Let us suppose that Gorham passed a check containing the name of "James A. Wolf" as maker and Gorham as payee. It certainly could be inferred from the presumptive transaction with the purported signer of the check that the payee had information as to the non-

existence, existence, or identity of the purported maker. If he himself by declarations or their equivalent particularizes his knowledge to show that the person he represents as having given him the check was "James H. Wolfe," then we have no difficulty in knowing that he purports to have been dealing with James H. Wolfe and to have had a check from James H. Wolfe. And if we add to that, the evidence of James H. Wolfe that he did not sign or authorize the check to be signed, it seems to me we have a particular case that Gorham uttered a check to which he knew that the name James H. Wolfe was intended to be forged, and that, therefore, he is properly convictable under the forgery statute.

I must admit that instruction No. 8 should have read: "You are instructed that before you can find the defendant guilty under the second count alleged in the information, you must first find that Exhibit 'A' is a forged instrument and that the name 'Sam L. Bringhurt' was put there by the forgerer and intended to be the name of Samuel E. Bringhurst, and that it was not drawn, made or executed by or with the consent of said Samuel E. Bringhurst," etc. However, I do not think that the instruction was misleading to the jury. The jury was sufficiently apprised of the fact that the name had been wrongly spelled; sufficiently apprised by the evidence of the fact that it was intended to be the name of Samuel E. Bringhurst; and sufficiently apprised of the fact that Gorham knew it was intended to be the name of Bringhurst; and sufficiently apprised of the fact that Gorham knew that it was not Bringhurst's signature. The fact that the court itself made a slip in the instruction, I do not think was prejudicial.

The difference between the case of *People* v. *Elliot*, supra, in which the name of "A. E. Rice & Co." was signed instead of the firm name of "Rice & McKee," and the defendant was charged with having forged the name of Rice & McKee, and this case, ought to be obvious on its face. Other cases

wherein the courts have applied the doctrine of idem sonans are as follows:

"The following have been held to be idem sonans, Segrave for Seagrave; 2 Strange, 889; Whyneard for Winyard; Russ & R. 412; Benedetto for Beneditto; 2 Taunt. 401; Keen for Keene; Thach. Cr. Cas. 67; Deadema for Diadema; *State* v. *Patterson*, 24 N. C. 346, 38 Am. Dec. 699; Hutson for Hudson; *Cato* v. *Hutson*, 7 Mo. 142; Coonrad for Conrad; *Carpenter* v. *State*, 8 Mo. 291; Gibney for Giboney; *Fleming* v. *Giboney*, 81 Tex. 422, 17 S. W. 13; Allen for Allain; *Guertin* v. *Mombleau*, 144 Ill. 32, 33 N. E. 49; Emerly for Emley; *Galveston, H. & S. A. R. Co.* v. *Daniels*, 1 Tex. Civ. App. 695, 20 S. W. 955; Johnston for Johnson; *Miltonvale State Bank* v. *Kuhnle*, 50 Kan. 420, 31 P. 1057, 34 Am. St. Rep. 129; Busse for Bosse; *Ogden* v. *Bosse*, 86 Tex. 336, 24 S. W. 798; Chambles for Chambless; *Ward* v. *State*, 28 Ala. 53; Conly for Conolly; *Fletcher* v. *Conly*, 2 G. Greene (Iowa) 88; Usrey for Usury; *Gresham* v. *Walker*, 10 Ala. 370; Faust for Foust; *Faust* v. *U. S.*, 163 U. S. 452, 16 S. Ct. 1112, 41 L. Ed. 224; Bubb for Bopp; *Myer* v. *Fegaly*, 39 Pa. 429, 80 Am. Dec. 534; Heckman for Hackman; Appeal of Bergman, 88 Pa. 120; Shaffer for Shafer; *Rowe* v. *Palmer*, 29 Kan. 337; Woolley for Wolley; *Power* v. *Woolley*, 21 Ark. 462; Penryn for Pennyrine; *Elliott* v. *Knott*, 14 Md. 121, 74 Am. Dec. 519; Barbra for Barbara; *State* v. *Haist*, 52 Kan. 35, 34 P. 453; Isreal B. for Israel B.; *Boren* v. *State*, 32 Tex. Cr. R. 637, 25 S. W. 775; Alwin for Alvin; *Jockisch* v. *Hardtke*, 50 Ill. App. 202; Helmer for Hillmer; *Cline* v. *State*, 34 Tex. Cr. R. 415, 31 S. W. 175; July for Julia; *Dickson* v. *State*, 34 Tex. Cr. R. 1, 28 S. W. 815, 30 S. W. 807, 53 Am. St. Rep. 694; Elliott for Ellett; *Robertson* v. *Winchester*, 85 Tenn. 171, 1 S. W. 781; Chegawgequay for Chegawgoquay; *Brown* v. *Quinland*, 75 Mich. 289, 42 N. W. 940; Keoliher, Kelliher, Kellier, Keolhier, Kelhier, are held sufficient for Kealiher; *Millett* v. *Blake*, 81 Me. 531, 18 A. 293, 10 Am. St. Rep. 275; Luckenbough for Luckenbach; *Schee* v. *La Grange*, 78 Iowa 101, 42 N. W. 616; Rooks for Rux; *Rooks* v. *State*, 83 Ala. 79, 3 So. 720; Tasso for Dasso; *Napa State Hospital* v. *Dasso*, 153 Cal. 698, 96 P. 355, 18 L. R. A. (N. S.) 643, 15 Ann. Cas. 910; Wadkins for Watkins; *Bennett* v. *State*, 62 Ark. 516, 36 S. W. 947; Gittings for Giddans; *Woody* v. *State*, 113 Ga. 927, 39 S. E. 297." 1 Bouv. Law Dict. Rawle's Third Revision (1914) p. 1484."

I agree with the prevailing opinion in its holding regarding the admission of the deposition of Elias A. Smith.

For the reasons above stated, I concur.

LARSON, Justice (dissenting).

I dissent. I think the judgment should be reversed and the cause remanded, with directions to grant a new trial. There are four points upon which I must disagree with my associates. I state my position on these matters as follows: (1) The trial court was in error in denying defendant's motion to dismiss the first count before any evidence was received. (2) The statement by the state's attorney, and challenged by defendant's counsel, was misconduct. (3) This action, on the record as made by the state, is not a forgery or violation of section 103-24-1, R. S. 1933, but, if committed, is a violation of section 103-24-7, R. S. 1933, to wit, a fictitious instrument. (4) The court's instructions to the jury were erroneous. I will notice them in their order.

(1) The information was in two counts: Forging a bank draft and uttering a forged instrument. Defendant has been tried twice. On the first trial he was found guilty only on the second count, that of uttering a forged instrument. It is elemental that where there is more than one count in an information, a conviction on one count only is in law an acquittal on the other count or counts. 16 C. J. 1107; *Jolly* v. *United States,* 170 U. S. 402, 18 S. Ct. 624, 42 L. Ed. 1085; *Bigcraft* v. *People,* 30 Colo. 298, 70 P. 417; *State* v. *Patterson,* 116 Mo. 505, 22 S. W. 696; *Tandy* v. *State,* 94 Wis. 498, 69 N. W. 160; *People* v. *Dowling,* 84 N. Y. 478; *Betts* v. *State,* 60 Tex. Cr. R. 631, 133 S. W. 251. Defendant, therefore, having been acquitted on the first count, could not again be tried upon that count. When this court reversed the judgment rendered on the first trial, the cause was remanded for retrial on the only count remaining upon which defendant could be tried, to wit, the second count. This seems to be conceded by Mr. Justice HANSON, but he argues that since defendant was again acquitted on the first count he cannot be heard to complain that he was again tried on that count.

Such argument does not answer defendant's challenge. When the trial court refused to dismiss the first count and

permitted the state to offer evidence thereon, argue it to the jury, and the court itself submitted to the jury the question of guilt or innocence, it broadened the field of evidence to be submitted to the jury; it permitted the state to offer evidence of and argue defendant's guilt upon another offense, for which he was not properly on trial, and the court itself emphasized and called attention to such other offense by submitting the same in instructions to the jury. We cannot say that such action was not harmful and prejudicial. It permits the state to paint defendant as an habitual criminal or law-breaker; to prejudice the jury to convict him of some crime on general principles. 8 R. C. L. 198; 16 C. J. 586. Such ruling and the procedure allowed after the ruling were prejudicial error.

(2) The question of improper conduct on the part of the state's counsel arises from the following situation: In the cross-examination of one of the state's witnesses, counsel for defendant sought to elicit from the witness certain facts which counsel deemed material and important. The prosecution objected to the question, and the following colloquy took place:

Counsel for defendant: "Do you want me to state my theory before the jury?" Prosecutor: "I don't think it necessary." Counsel for defendant: "I want to advise the court of my theory." Prosecutor: "Let the defendant tell the theory later on."

Defendant's counsel then moved for a mistrial, assigning the statement of counsel for the state as misconduct. The motion was denied with the statement that defendant was not obligated to take the witness stand, and, therefore the jury should disregard the statement of the district attorney with regard to that. I am not prepared at this time to say that the remark was such misconduct as to require us, at this stage, to reverse the judgment. But the remark of state's counsel was highly improper. It was ill-becoming an attorney of repute, and should not be indulged in or permitted in any court. Such comments and interjections by

counsel, repartees and "back snapping" between counsel are far too common and frequent in the trial of cases. They tend to lessen the esteem in which both the courts and the profession are held, and savor of a vaudeville or sideshow, more than a court of justice. If counsel will not refrain from such things, and practice according to the highest standards, it is the duty of the trial court to see that counsel refrain from bickerings, caustic comments to each other, insinuations, and innuendoes, and deport themselves as counsel should, zealous in the interest of their clients, but fair to the opposing party, honest with the court, and be gentlemen at all times. And counsel should never, without proper rebuke, be permitted to interject by comment to counsel or witness, or under the guise of argument to the court, matters which he could not conscientiously urge as proper evidence to be considered in the cause. The comment of the court in denying the motion for mistrial, that "defendant was not required to take the witness stand," probably emphasized the vice in the remark by state's counsel, "Let the defendant tell the theory later on," and called attention to the fact that the meaning of the statement that counsel should not be making his statement to the court, but that defendant should be the only proper mouthpiece for the defense. On such occasions, the court should promptly strike the statement from the record, reprimand counsel for making such interruptions and interjections, with a warning that repetitions would lead to mistrial.

(3) This brings me to the most serious point in the record. The defendant was charged with and convicted of uttering a forged instrument, a violation of section 103-24-1, R. S. 1933. I think the evidence shows that if any crime was committed it was that of uttering a fictitious instrument, a violation of section 103-24-7, R. S. 1933. Under the former section, forgery, so far as material here, is defined:

"Every person who, with intent to defraud another, falsely makes, alters, forges or counterfeits any * * * check, draft, bill of exchange * * * or counterfeits or forges the seal or handwriting of another

* * * or utters, publishes or passes, * * * *as true or genuine* any of the above-named false, altered, forged or counterfeited matters, * * * *knowing the same to be false, altered, forged or counterfeited,* was intent to prejudice, damage or defraud any person; * * * is guilty of forgery." (Italics supplied.)

The penalty is 1 to 20 years in the state prison. Section 103-24-4. This foregoing section, standing alone, may be broad enough in its terms to cover the facts as shown by the state's evidence in the case at bar. But we have another statute, a special section, or specific statute, section 103-24-7, which reads:

"Every person who makes, passes, utters or publishes, with intention to defraud any other person * * * any fictitious bill, note or check, purporting to be the bill, note, check or other instrument in writing for the payment of money or property of some bank, * * * or individual *when in fact there is no such bank* * * * *or individual in existence, knowing the* * * * *check or instrument* * * * *to be fictitious,* is punishable by imprisonment * * * for not less than one nor more than ten years." (Italics supplied.)

As pointed out by Mr. Justice HANSON, our statute was taken from California, and it has there been held that a conviction of forgery could not be sustained where the facts disclosed a fictitious name had been used. *People* v. *Elliot,* 90 Cal. 586, 27 P. 433. And that where the name used on the check was not that of a living person, the instrument was fictitious, and a prosecution should be had under the section governing fictitious instruments. This, too, where the penalty under the two sections was the same. *People* v. *Eppinger,* 105 Cal. 36, 38 P. 538, *People* v. *Terrill,* 133 Cal. 120, 65 P. 303. In this state the penalties under the two sections are different, so it becomes of more moment and significance that the proceeding be under the right section. This, too, is conceded by Mr. Justice HANSON, but he seeks to avoid the rule by invoking the doctrine of idem sonans.

I do not think the doctrine of idem sonans has any relationship to the issues here involved. The state itself proved, much of the evidence over defendant's objection, that the

instrument was a fictitious one; that there was no person in existence whose name was signed to the draft, the test of a fictitious instrument. It is argued in the prevailing opinion that if the maker of the draft intended to use the name of "Samuel E. Bringhurst" but wrote "Sam L. Bringhurt," it would constitute a forgery of the name of Samuel E. Bringhurst. Such a position is untenable. It makes a mere intent a crime, where the overt act does not show the intent and does not carry out the intent. It also makes the intent of one man a crime on the part of another. In the first trial, and again on the second trial, defendant was acquitted on a charge of making the instrument, of writing it. Yet it is argued that the intent of the writer of the instrument to use one name, but actually using another name, carries over to make a crime of that intent on the part of another who merely passes or utters the instrument, without any evidence that he knew anything about the intent of the person who wrote the instrument, to use any other name than that written. In the third place, the conclusion follows from such doctrine that because the name used was fictitious the jury may infer that some one not on trial, who wrote the instrument, intended to use some other name than that written, merely from the fact that the name is fictitious, and this in spite of the statute. To quote the language of Mr. Justice HANSON, in his opinion, "the prosecuting officer must therefore initially consider whether the instrument involved will prove to be fictitious or not" and bring his action accordingly.

Let us look briefly at the evidence. The evidence in the record tending to connect the name on the draft "Sam L. Bringhurt" with "Samuel E. Bringhurst" of Murray, was not the words or statement of defendant but the deductions and conclusions of the state's witnesses. Arthur Knight testified:

"Q. Relate the conversation you overheard? A. Discussing the check and Mr. Gorham said that Sam, in relation to this Sam Bringhurst whose name was on the check, that he was in the automobile

business in Murray and that he was in the bishopric of one of the wards in Murray."

Of course, none of this is a direct statement of defendant, and I find it impossible to tell what is meant for the substance of the conversation and what parts are the witness's explanatory interpolations. Then, in answer to a question as to conversations as to the standing of Bringhurst in the community, the witness stated.

"A. It was stated at that time that *we* thought he was doing a good job down there in the automobile business; he was generally admired and known by the boys that were there in the group." (Italics supplied.)

This is clearly not Gorham's statement. Ralph Brandley, the man who gave out the cash for the draft, testified:

"Mr. Gorham handed Mr. Pearson this particular check, and I remember Mr. Pearson taking it in his hand, and he says, 'Well, this is Sam Bringhurst at Murray. I know him very well' and as I remember it Mr. Gorham agreed that it was the Mr. Bringhurst, and Mr. Gorham also said that he was an official, or a bishop, or held an office in the Mormon Church, and Mr. Pearson said he knew Mr. Bringhurst very, very well and he admired him for the way he done business."

On redirect he was asked:

"Q. Who was the first person you heard mention the name of Bringhurst at Murray? A. Well, the first person I heard say it was Mr. Pearson, and then Mr. Gorham said—they discussed him and Mr. Gorham said, 'Yes,' he thought he was a successful business man in Murray."

L. M. Pearson, who had the conversation with defendant, testified:

"It is hard for me to remember what that conversation was. I recall that we talked about automobiles, and about his Buick, and about his Chrysler and business conditions, and we talked about the gentleman, Mr. Samuel L. Bringhurst * * * who was in the automobile business. Well, I don't recall exactly the conversation at the time.

I recall this, however, that Samuel L. Bringhurst's check was tendered to me, what *I thought* was his check, by Mr. Gorham." (Italics supplied.)

And on cross-examination:

"Well, he presented me with a check and I did not scrutinize the check at all, I was doing business with Mr. Gorham and I felt that the check was fine and dandy. As a matter of fact I accepted it and o'-kayed it. * * *"

At the former trial in 1933, the witness testified:

"Q. Did you have any conversation with regard to the maker of the check at that time? A. Well, I don't remember about that, I don't know as we talked about that at all. We talked about the Buick, and we talked about his Chrysler and we talked about automobile business in general, but I don't particularly remember at this time whether we talked about Mr. Bringhurst or not. After the check was cashed we talked about that, Mr. Black."

I have gone over the record with a fine tooth comb and have here set forth all the evidence in the record, just as it appears in the reporter's transcript, about the conversation or representations about the check or its maker. The outstanding fact from all this evidence is that it was not the defendant who stated and represented the draft to be that of Samuel E. Bringhurst of Murray, but Mr. Pearson, who looked at the check, stated it was Bringhurst's check; that he knew Bringhurst and the check was O.K. The fact that defendant did not contradict the statement and acquiesced in the statements of the others present is of small significance, especially in view of the fact that a jury has twice found that defendant did not make or write the draft.

But the state was not content with showing that the signature was not that of Bringhurst. It assumed the burden, often over defendant's objection, of showing that the draft was, in fact, a fictitious instrument rather than a forged instrument. It called to the witness stand the auditor of the bank on which the draft was drawn and proved by him that

there was not, and had never been, an account in that bank in the name of "Sam L. Bringhurt" or in the name of "Samuel E. Bringhurst" or "Samuel L. Bringhurst." This was offered and received over the objection of the defendant. Such evidence was wholly immaterial and irrelevant on any issue under the charge for uttering a forged instrument, for there the issue is the bona fides of the signature. But such evidence is proper and essential, and is by itself and alone prima facie evidence that the instrument is fictitious. *People* v. *Eppinger*, 105 Cal. 36, 38 P. 538; 3 Greenleaf on Evid., § 108; *Rex* v. *Backler*, 5 Car. & P. 118; *Rex* v. *Brannan*, 6 Car. & P. 326. The state also put into the record evidence that there was no man around Murray, or known, or to be found in Salt Lake county, by the name of Sam L. Bringhurst. This also was received over defendant's objection as immaterial and irrelevant. On the issue of uttering an instrument with a forged signature, such objection was well taken, but on an issue as to whether the instrument was fictitious, the evidence was very material and cogent, as going to prove there was in fact no such person as Sam L. Bringhurst in existence. Only upon that theory was the evidence pertinent. *People* v. *Sharp*, 53 Mich. 523, 19 N. W. 168; *State* v. *Hahn*, 38 La. Ann. 169. It is evident, therefore, that the evidence shows that the instrument was not one with a forged signature but was a fictitious instrument, and, if an offense, was a violation of section 103-24-7, R. S. 1933, and should not be prosecuted under section 103-24-1. This will further appear from my discussion of the fourth point.

(4) The court's instructions to the jury were confusing, contradictory, and erroneous as statements of law. Instruction No. 3 tells the jury that to find the instrument was a forged instrument (without which finding there could be no conviction under the information), they must find that the name "Sam L. Bringhurt," as signed to the draft, was intended to be and meant for the signature of "Samuel E. Bringhurst." And, of course, unless such fact were found the instrument could not be a forged instrument upon which

a conviction would lie. No other definition of forgery was given. No instruction was given as to whether defendant was authorized to sign the draft for "Bringhurst." But in instructions numbered 7 and 8, the jury are told that they must find that the defendant was not authorized to execute the draft by "Sam. L. Bringhurt." The jury are thus told that to find the instrument was forged, they must find that Sam L. Bringhurt, whose name appeared on the draft, was not a real person, was a fiction, intended for one Samuel E. Bringhurst; and then told that they must find that defendant did not have authority, not from Bringhurst, but from this fictitious, non-existent person, Sam L. Bringhurt, to sign his, Bringhurt's, fictitious name to the draft.

The instructions as a whole do not properly instruct the jury on any essential matter in the case. They consist merely of a copy of the information and the usual stock instructions. Instruction No. 1 is just a copy of the information; No. 2, just a statement of plea and burden of proof; Nos. 3, 5, 6, and 7 by their express terms apply only to the first count, and since defendant in the former trial had been acquitted on that count, that count was not properly involved in this trial, and the instructions thereon were outside the record and should not have been given at all. Commencing with instruction No. 9, to the end of the charge, they are simply standard stock instructions. This leaves only instructions Nos. 4 and 8 pertaining to the issues in the cause. I set them out in haec verba:

No. 4. "You are further instructed that in order to find the defendant guilty of the crime of forgery as charged in the second count of the information the burden is upon the State to prove to your satisfaction beyond a reasonable doubt

"1. That the defendant, C. Gorham, on the 31st day of December, 1932, at the County of Salt Lake, State of Utah, did wilfully pass as genuine and true to and upon the Goodrich Silvertown Incorporated, a corporation, a certain writing on paper purporting to be a bank draft;

"2. That said writing on paper was the writing described and the tenor whereof is set out in the second count of the information;

"3. That said writing on paper purporting to be a bank draft was a forged instrument;

"4. That he passed the same to and upon the Goodrich Silvertown Incorporated, a corporation, as a genuine and true bank draft;

"5. That he passed the same upon the aforesaid Goodrich Silvertown Incorporated, a corporation, with intent to defraud the said Goodrich Silvertown Incorporated, a corporation.

"You are further instructed that in order to find the defendant guilty of the crime of forgery as charged in the second count of the information it is not enough that one or more of the elements of said crime hereinbefore enumerated be proved to your satisfaction beyond a reasonable doubt short of all of them, but in order to convict the defendant on said second count of the information it will be necessary that you find to your satisfaction and beyond a reasonable doubt each and every one of the essential elements of said charge hereinbefore enumerated."

No. 8. "You are instructed that before you can find the defendant guilty under the second count alleged in the information, you must first find that 'Exhibit A' is a forged instrument and was not drawn, made or executed by or with the consent of Sam L. Bringhurt; and that you further find that the defendant, at the time he presented said instrument to the Goodrich Silvertown Inc. knew that said instrument was a forged instrument, and that he then and there intended to defraud the said Goodrich Silvertown Inc. by the presentation of said instrument, and if any of said elements are lacking, your verdict on said count must be not guilty."

There is no definition of what constitutes a forged instrument; no gauge by which the jury may determine whether it was forged; no way for them to know what was meant by a forged instrument, unless we find it in instruction No. 8 in the statement that it "was not drawn, made, or executed by or with the consent of Sam L. Bringhurst." Such a statement recognizes the existence of a man named Sam L. Bringhurt. It recognizes that it was his name on the draft and intended for his signature. But no effort was made to show that Sam L. Bringhurt had not signed the instrument himself; and no effort to show he had not authorized it; no evidence given it was not his signature. Bear in mind also that the jury twice found that defendant did not write the instrument. The case, therefore, under this instruction comes

squarely within the rule laid down by this court on the first appeal, and should be reversed for the same reason. *State* v. *Gorham*, 87 Utah 86, 48 P. (2d) 447.

And if we consider all the instructions given, even those as to the first count, as applying or to be considered in connection with the second count, the matter gets worse. Because, in instruction No. 3, the court tells the jury that before they can find the instrument was forged, they must find "that the name Sam. L. Bringhurt as signed to said draft and the name Samuel E. Bringhurst represent the same person, and that in signing the name of Sam L. Bringhurt to said draft, the defendant, C. Gorham, thereby intended to sign the name of Samuel E. Bringhurst," and then in instruction No. 8 they are told that it is not a forged instrument unless it was made and drawn without the consent, not of Bringhurst, but of one Sam L. Bringhurt. But independent of instruction No. 8, the instruction numbered 3 is erroneous and does not make a forged instrument under section 103-24-1, but makes a fictitious instrument under section 103-24-7. A similar instruction in form and substance was before the Supreme Court of California in *People* v. *Elliot,* supra, and I quote from that able opinion. Bear in mind that our statute was taken from California, and her section 470 is our section 103-24-1, and her section 476 is our section 103-24-7. I quote:

"The court gave the jury the following instruction: 'If you find from the evidence beyond a reasonable doubt that at the time and place alleged, with the intent alleged, defendant did feloniously make, utter, and pass as genuine the check in question; that he intended to sign thereto the name of the firm of Rice & McKee, and by mistake signed the name of "A. E. Rice & Co." believing that to be the correct name, and uttered the same as the genuine check of said firm; and that said Southern California National Bank is a corporation as alleged; and that said check is false and unauthorized,—then you should find the defendant guilty, notwithstanding the mistake in the name of said firm.' Without going into a technical analysis of this instruction, as to whether or not it fully answers the requirements of the law in other respects, let us see if it be true that in the words of

the instruction the defendant is guilty of forgery, 'if, intending to sign the name of the firm of Rice & McKee to the check, by mistake he signed the name of A. E. Rice & Co., believing that to be the correct name.' Where a note, bill, check, etc., is the subject of a forgery, it must be proven that the instrument was not signed by the person by whom it purports to be signed, or that such person did not exist at the time; or, in other words, is a fictitious person. In this case, as we have already seen, the proof is lacking in both of these essential respects. Considered in the light of the foregoing instruction of the court, there is no such firm in existence as 'A. E. Rice & Co.;' therefore, the check is fictitious, and the prosecution should have been had under section 476, heretofore cited. The law appears to recognize a distinction between forged instruments purporting to have the signature of a person in existence, and those where the signature is purely and entirely fictitious. Indeed, at common law, at one time, it was not forgery to sign the name of a fictitious person to an instrument. Section 470 of the Penal Code is quite broad in its terms, and, in the absence of said section 476, it might probably be construed broad enough to include fictitious instruments as referred to in said section; but, the legislative mind having been directed specially to that class of instruments with reference to the offense of forgery, it would seem the act of making or passing a fictitious check could only be prosecuted when brought within the requirements and conditions of that section. Considered in the light of the instruction, the signature is of a copartnership not in existence, which, ipso facto, makes the instrument a fictitious check; and the fact, if it be a fact, that defendant intended to sign the name of an existing firm to the check appears to be entirely immaterial. He is being prosecuted, and necessarily so, for an offense actually committed, and not for an offense he may have intended to commit. The law does not recognize a man's intentions as a crime, however corrupt and criminal those intentions may be. His intentions simply form the light by which we read and weigh his acts. This is in no sense a question of idem sonans, but the defendant appears to have been prosecuted upon the theory that the signature of the existing firm 'Rice & McKee,' for the purposes of this case, was attached to the check."

It follows, therefore, in my opinion, that the judgment should be reversed, and the cause remanded to the district court of Salt Lake county, with directions to grant a new trial.