## THE STATE v. HARRY FIELDS, Appellant.

**Division Two, November 24, 1914.**

1. **APPEAL: Criminal Case: No Brief.**   Although appellant in a criminal case has filed no brief, still the Supreme Court under the statute must review the complete record.

2. **INDICTMENT: Venue: Stated in Margin.**   It is sufficient that the venue be named in the margin or caption of an indictment.

3. **———: Time: Not of Essence of Offense: Killing Animal With Intent to Steal It.**   Time is not of the essence of the offense of wilfully killing an animal with intent to steal it, and therefore an indictment is not invalid that fails to state the time when an alleged offense of that kind was committed.

4. **OBJECTIONS TO EVIDENCE: Exceptions: Appeal.**   To avail upon appeal an objection to the admission of evidence must assign a reason or ground why the evidence is objected to, and an exception must be saved to the court's action in overruling the objection.

5. **VERDICT: Supported by Evidence: Appeal.**   Before the Supreme Court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of the evidence, or it must be so weak that the necessary

State v. Fields.

inference is that the verdict is the result of passion, prejudice, or partiality.

6. ————: ————: ————: Wilfully Killing Hog with Intent to Steal It. Although in a trial for wilfully killing a hog with intent to steal it, there is no direct evidence that defendant shot the hog with such intent, yet, in view of the fact that the wound in the head of the animal was about the size of a silver dollar and contained portions of paper wadding, almost entirely discrediting plaintiff's statement that, thinking the hog a squirrel, he fired a shotgun at it while he was thirty or forty feet from it, and of the further facts that soon after the shooting he answered, "Nothing, nothing," to a question from a person on the place as to what he was doing, and told the constable on the night of his arrest that "he had killed the hog, he did not aim to let his family starve," it is *held* that the evidence is sufficient to support a verdict of guilt.

Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelly*, Judge.

Affirmed.

*Duncan & McCarty* for appellant.

*John T. Barker*, Attorney-General, and *Shrader P. Howell* for the State.

WILLIAMS, C.—Under an indictment charging defendant, under section 4541, Revised Statutes 1909, with wilfully killing a hog, with intent to steal the same and convert it to his own use, defendant was tried in the circuit court of Pemiscot county, found guilty by the jury and his punishment assessed at two years in the penitentiary. Defendant thereupon perfected an appeal to this court.

The evidence upon the part of the State tends to establish the following facts: About 2 p. m., on the 22d day of November, 1912, a sandy-colored hog, weighing over 200 pounds, the property of one Joe Hampton, was found dead in front of Hampton's residence

and about 40 yards from his barnyard gate. The hog was first discovered by Mrs. Hartwell, a niece of Mr. Hampton, who, with her husband, lived in the Hampton home, keeping house for Mr. Hampton. On the date in question, defendant Fields, in company with one Fred Allen, each on horseback, left the farm of a Mr. Winslow, where defendant Fields had been engaged in harvesting his corn crop, which he had, as tenant, raised on Mr. Winslow's farm, and started to the home of defendant near Wardell, Missouri. The route from the Winslow farm to the defendant's home led by the Hampton farm. Before reaching the Hampton farm, the two men met one Louis Ayres who was carrying a shotgun. Thereupon defendant borrowed the shotgun from Ayres and directed that Ayres and Allen take charge of the two horses and continue on down the road, stating that he would cut across country, through the timber, and hunt for squirrels. Ayres testified that when he and Allen were about half a mile from the Hampton house, he heard the report of a gun followed by the squealing of a hog. The report of the gun was also heard by Mrs. Hartwell, who, returning from taking dinner to her husband, at that time engaged in work about a mile from the house, had reached the vicinity of the barn lot on the Hampton farm when she heard the report of the gun and noticed that the cow, hogs, and chickens in the barn lot were much frightened. She turned into the lot and met the defendant Fields therein, who had a shotgun in his hand. She asked him what he was doing there and he replied, ''Nothing, nothing.'' In a few minutes defendant left the premises but returned shortly and requested Mrs. Hartwell to cook a squirrel for him. This request was refused and defendant again departed. A short time thereafter, Mrs. Hartwell, while doing some chores about the premises, discovered the body of the dead hog, at the place above mentioned. At that time fresh blood was oozing out of the head of the

hog.  Mrs. Hartwell's husband  and the hired hand about the place returned home about sundown, examined the hog and dressed the same for meat.  In their examination and dressing of the hog, they found that a hole about the size of a silver dollar was torn in the head of the hog just above the left eye, and that the wound was made by a shotgun, portions of the paper wadding being found in the wound.  After leaving the Hampton premises, defendant joined his companions some distance down the road, and about dusk they arrived at the home of a neighbor about a mile distant from the Hampton farm, where they obtained their supper.  At this farm defendant attempted to borrow a wagon, stating that he desired to haul some corn, but the loan of the wagon was refused.  Defendant was arrested about the 5th of December by the constable and upon being arrested voluntarily stated to the constable that, on the day in question, he had been hunting in the timber and saw a squirrel run up a tree and while endeavoring to locate the squirrel heard a noise in some nearby bushes and thinking it was a squirrel had fired in that direction and killed the hog. Later, and on the same evening of the arrest, and while defendant and the constable were waiting in a saloon in order to give defendant time in which to furnish bail, the defendant in the meantime having become somewhat intoxicated, stated to the constable "that he had killed the hog; that he did not aim to let his family starve."  The evidence on the part of the State further showed that the body of the hog was found in some dead weeds in an open space in front of the house and that the timber did not exist for a space of thirty or forty yards beyond that point.  Defendant, who was not cross-examined, testified as follows:

"Well, I had been over at Terry gathering my crop; it was the 22d of November when I got done, so I tried to get a wagon from Mr. Winslow and Mr.

Johnson to take my corn home before they cut the ditch—this ditch was going to be cut on the 25th of November and then I couldn't get my corn to my home without going four or five miles out of the way, so I had started to Wardell to borrow a wagon, so I met Louis on the way as I was going to Wardell and he had a shotgun and I says, 'Now, you fellows take the horses and I'll go through the woods and kill some squirrels,' and I went on through the woods and they taken the horses, and I had killed a couple of squirrels and as I was going along the road I saw another one run across the road and it run up a tree and I run around the tree to shoot it but I couldn't see anything of it, so a little noise attracted my attention, I guess thirty or forty steps away, and I thought I saw the squirrel and I blazed into this place and this hog raised up and squealed and run off; I didn't know the hog was dead until two or three days after that, and when I found out that the hog was dead I offered to pay for it; I come on by there to see him but he wasn't there; I sent Louis there two or three times to pay him for the hog and he said that it was all right.

"Q. What did you think you were shooting at at the time you shot this hog? A. I thought I was shooting at a squirrel.

"Q. What color was it? A. I thought it was a fox squirrel.

"Q. What was the color of this hog? A. Kind of a red—brownish."

Appellant has failed to favor us with a brief in his behalf but, pursuing our statutory duty in the premises, we will proceed to review the complete record which is before us.

No Brief for
Appellant.

I. The indictment is attacked on the grounds that it does not properly charge the venue nor the date of

the commission of the alleged offense. It
Indictment:    is true that the body of the indictment
Venue.         does not state the venue. However, the
proper venue is named in the caption or margin there-
of, and this under the statute is sufficient. [R. S. 1909,
sec. 5107; State v. Long, 209 Mo. 366, l. c. 377.]

Neither does the indictment state the time at which
the offense was committed. However in the present
Time.          case time is not of the essence of the of-
               fense and the omission therefore does not
render the indictment invalid. [R. S. 1909, sec. 5115.]

II. In the motion for new trial, it is alleged that
the court erred in excluding proper evidence offered
by appellant and in admitting improper evidence of-
               fered by the respondent.    With refer-
Objections to  ence to the first point, it is sufficient to
Evidence.      say that a careful review of the record
fails to disclose a single instance wherein the court
excluded any evidence offered by appellant. As to the
second point the record does disclose some unimpor-
tant instances where the court admitted evidence of-
fered by the State over the objection and exception of
appellant, but the rulings of the court thereon appear
to be free from any error and furthermore in the large
majority of instances the record shows that either the
objection made did not assign any reason or ground
for the objection or when objections were properly
made and overruled no exception was saved to the rul-
ing of the court thereon. As to all such instances no
matter is preserved for review.

III. Other assignments of error in the motion for
Sufficiency of new trial allege that the evidence is in-
Evidence.      sufficient to support the verdict.

The evidence shows that defendant killed the hog,
which was the property of another. It is true that
there is not direct or positive evidence that he wilfully

killed the hog with intent to steal the same or convert the same to his own use, yet we are of the opinion that the evidence is sufficient to sustain the verdict. The fact that the wound in the head of the hog was about the size of a silver dollar and contained portions of paper wadding from the discharged cartridge indicates that defendant was very close to the hog when he fired the shotgun and would almost entirely discredit his statement that he was 30 or 40 steps distant and therefore at such distance as to allow the theory to prevail that he might have mistaken the hog for a squirrel. This, considered in connection with the fact that just after the shot was fired, in answer to the question of Mrs. Hartwell as to what he was doing, he answered, ''Nothing;'' thereby showing an attempt at concealment of what he had done and the statement which he made to the constable on the night of his arrest that ''he had killed the hog; that he did not aim to let his family starve,'' supplied sufficient facts and circumstances to support the verdict.

The correct rule with regard to the sufficiency of the evidence is stated by FARIS, J., in the case of State v. Concelia, 250 Mo. 411, l. c. 424, as follows:

''Where there exists upon the record, what has been rather loosely called any 'substantial evidence' of the existence of a state of facts legally required to be shown, it is our duty to relegate the determination of controverted questions to the triers of fact. 'The rule is, that before this court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is, that the verdict is the result of passion, prejudice or partiality.' ''

We have examined the instructions given by the court and find the same to be free from any error that would work a reversal of the case. Neither does any error appear upon the record proper. It appears that

the defendant has had a fair and impartial trial and that the judgment should be affirmed. It is so ordered. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WIL-LIAMS, C., is adopted as the opinion of the court. All the judges concur.