THE STATE v. WILLIE CAVINESS, Appellant.—33 S. W. (2d) 940.

Division Two, December 20, 1930.

*Barney Reed* for appellant.

*Stratton Shartel*, Attorney-General, and *Edward G. Robison*, Assistant Attorney-General, for respondent.

PER CURIAM:—The following opinion written by one of our Commissioners, except as to our disposition of appellant's assignment of error in respect to Instruction 1, is adopted by the court as modified.

Defendant was charged by an information in the Circuit Court of Camden County, Missouri, with feloniously selling hootch, moonshine or corn whiskey. Upon a trial, March 25, 1929, before a jury, he was convicted and his punishment fixed at two years in the state penitentiary. Motion for new trial was filed, overruled and defendant sentenced. From this sentence and judgment, he has appealed to this court.

On December 13, 1928, the prosecuting witness, Dallas Stamper, and one McCubbin drove to Linn Creek in Stamper's car. After spending some time in Linn Creek, Stamper met Dubb, or Clark, Creach and with him drove to the home of defendant, arriving there about the noon hour. Defendant lived about three miles from Linn Creek. Defendant was eating dinner at the time of the arrival and with him were his wife and the defendant's sister, Verna Miller. There is a sharp conflict in the testimony as to what transpired at the defendant's home. According to witness Stamper, a short conversation was had with defendant, when witness Creach spoke of buying some whiskey; that defendant produced a pint and Stamper paid defendant $1.50 for the whiskey. Then he, Stamper, and Creach both took a drink and left the place to return to Linn Creek. According to Stamper, the two drove toward Linn Creek, but before arriving there, returned to the home of defendant to buy more whiskey. On reaching defendant's place the second time, he, Stamper, bought another pint of whiskey. Witness further testified that he met Jim Roach in the yard, as they were leaving, after buying the second pint; that Roach also took a drink. Stamper further testified that what he bought was corn whiskey. According to Stamper, he and Creach, after leaving Roach, started toward Linn Creek, but did not reach their destination, intoxication overtaking him to such an extent that he, to use a common expression, passed out, and was not conscious of what transpired until the next day. Officers arrived in time, arrested Stamper, placed him in jail and held him there until the following day. When pressed by the officers as to where he had purchased the whiskey, Stamper informed them he had bought it from the defendant. He was then permitted to sign a bond and released from custody. The other testimony in behalf of the State consisted chiefly in introducing in evidence the whiskey found on witness Stamper and that the officers had found him dead drunk and had arrested him and placed him in jail.

The evidence on the part of defendant is in substance, as follows: Dubb, or Clark, Creach, who was with Stamper, denied positively that the defendant sold Stamper or Creach any whiskey; that Stamper had the whiskey before they arrived at the defendant's home the first time; also, that Roach was at the defendant's home

the first time the witness and Stamper arrived there; that at that time witness Stamper had two bottles of whiskey. Witness Roach testified that he was at the defendant's home when Stamper and Creach arrived; that Stamper at that time had whiskey and the defendant did not sell Stamper anything while he was present; that Stamper offered him a drink and he informed him he did not desire to drink all of his whiskey. Stamper replied that he had plenty more and produced another bottle. Then, according to witness Roach, he, Roach, took a drink and went his way. Witness Verna Miller, sister of the defendant, testified the defendant did not sell Stamper or Creach any whiskey and that Stamper had whiskey when he arrived at the defendant's home. The defendant's wife testified substantially the same, and also testified that when Stamper and Creach arrived at their home the second time Stamper was pretty drunk and defendant ordered them away from the house, asking Creach to take Stamper away. The defendant positively denied he sold any whiskey to Stamper on that day or any other day and also testified that when Stamper and Creach arrived there the second time he asked Creach to take Stamper away because he was pretty drunk.

Then the defendant placed three witnesses on the stand to impeach the reputation of prosecuting witness Stamper for truth and veracity and morality. All three of these witnesses testified that Stamper's reputation was bad, both as to truth and veracity and morality. It was also in evidence that Stamper had been convicted of violating the prohibition laws.

In rebuttal, the State offered witness McCubbin, who testified that he drove to Linn Creek in the morning with Stamper and he did not notice Stamper having any whiskey. County Clerk Huddleston testified that Stamper was in his office about noon on some day about the 13th and at that time Stamper did not appear to have been drinking. The State also offered Luke Moulder, J. M. Hawkins and James Carson as witnesses to testify as to the good reputation of the prosecuting witness for truth and veracity. All of these witnesses testified in substance that they had never heard the reputation of Stamper questioned as to truth and veracity, but his reputation for morality was bad. This is in substance all the testimony offered at the trial.

The defendant filed a plea in abatement in this case contending that the complaint filed before the justice of the peace was signed by one not having any actual knowledge of the crime charged. Also that the transcript of the justice of the peace contains no finding that a crime had been committed or that there was probable cause to believe the defendant guilty; that, therefore, no legal preliminary hearing was had. In support of this plea in the circuit court, the defendant introduced

the complaint filed before the justice and the transcript of the justice of the peace. As to the first point, it is sufficient to state no showing was made in the circuit court that the complaining witness had no actual knowledge of any fact with reference to the alleged crime. As to the second, the transcript of the justice of the peace recites in substance, as follows: That a complaint had been filed, under oath, charging the defendant with a felony; that a warrant was issued by the justice and a return made by having the defendant before the justice of the peace. A day was set for the trial, the defendant appearing, pleading not guilty. A hearing was held, evidence offered by the State and also by the defendant; and further, that the justice held the defendant under bond in the sum of $1,000 to appear in the circuit court the fourth Monday in March, 1929. Absent any other testimony, we deem this a sufficient showing that the defendant was accorded a preliminary hearing and that the justice of the peace found a crime had been committed and there was probable cause that defendant was the guilty party. The defendant was bound over to the circuit court, as required by law, Section 3848, as amended by Laws of 1925, page 195.

The defendant also insists that the information is defective because it charges that the defendant sold hootch, moonshine *or* corn whiskey. No motion to quash was filed and the defect was first questioned in the motion for new trial. It is too late to raise this point for the first time in the motion for new trial. [State v. Bostic, 285 S. W. 432, and cases there cited.] Defendant also complains that the information omitted the year in which the crime charged had been committed. This defect is also cured after verdict. [Sec. 3908, R. S. 1919; State v. Fields, 262 Mo. l. c. 163.]

Instruction 1 is said to be erroneous because it did not require the jury to find that the defendant *feloniously* sold corn whiskey. Section 21, Laws 1923, page 242, in so far as applicable to this case, provides that, if any person shall sell corn whiskey, he shall be guilty of a felony. The statute fully defines every element of the offense and denominates it a felony. When the jury had been required to find all of the constituent elements of the offense, as Instruction 1 did, there is no reason for requiring the jury to find further that the act was feloniously done. An instruction drawn in the language of the statute, embodying all the elements of the offense, is sufficient. [State v. McCord, 237 Mo. 242, l. c. 246, 140 S. W. 885; State v. Hatcher, 303 Mo. 13, l. c. 24, 259 S. W. 467.] It has several times been explicitly held by this court that, where the instruction requires the jury to find every element of the offense as defined by the statute, it is not

necessary to require the jury also to find that the particular act was feloniously done. See State v. Pullens, 81 Mo. 387, l. c. 392; State v. Miller, 93 Mo. 263, l. c. 268, 6 S. W. 57; State v. Scott, 109 Mo. 226, l. c. 232, 19 S. W. 89; State v. Cronin, 189 Mo. 663, l. c. 670, 88 S. W. 604; State v. Tipton, 307 Mo. 500, l. c. 514, and cases there cited.

The defendant earnestly insists that there is no substantial evidence to support the verdict. An examination of the evidence discloses that only one witness testified to material facts connecting the defendant with the crime charged. This witness was impeached for truth and veracity and morality by the defendant's witnesses, three in number. The State's character witnesses testified that they had never heard the reputation for truth and veracity of the prosecuting witness questioned, but that his reputation for morality was bad. The prosecuting witness was contradicted on material points in evidence by two disinterested witnesses and also by the defendant, his wife and defendant's sister. If, under these circumstances, we hold that there is substantial evidence to support the verdict, then it is a question of the weight of the testimony, which is left to the jury and the trial court. The rule is stated by FARIS, J., in State v. Concelia, 250 Mo. 411, l. c. 424, as follows:

"Where there exists upon the record, what has been rather loosely called any 'substantial evidence' of the existence of a state of facts legally required to be shown, it is our duty to relegate the determination of controverted questions to the triers of fact. 'The rule is, that before this court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is, that the verdict is the result of passion, prejudice or partiality.' " [State v. Fields, 262 Mo. 158.]

The trial court had the opportunity to observe and hear the witnesses and is in a much better position to pass on the question of the weight of the evidence and, therefore, that is left to him. In this case we feel that we must defer to his good judgment, since we do not hold, as a matter of law, that there is no substantial evidence offered on behalf of the State in support of the verdict. [State v. Flynn, 258 Mo. 211, l. c. 224.]

The defendant offered an instruction, which was refused by the court, on the credibility of the witness. The court gave a similar instruction which is correct in form, but does not contain what is often termed *"falsus in uno, falsus in omnibus* instruction."* The defendant's instruction contained this provision. In the early cases, it was held that a refusal

of this instruction was error. [State v. Dwire, 25 Mo. 553.] The later cases, however, hold that the giving or refusal of this instruction is left to the sound discretion of the trial court: [White v. Maxey, 64 Mo. 552, l. c. 559.] For a review of the authorities, see Milton v. Holtzman, 216 S. W. 828. In that case the court said:

"But, though it may not be error to give an instruction of this character in a particular case, it does not follow that it would be reversible error to refuse such an instruction. The trend of judicial authority in this State is to the effect that the propriety of giving an instruction of this character is a matter resting to a very great extent in the sound discretion of the trial court, and that the action of the trial court in the matter will not be disturbed unless there is a manifest abuse of such discretion to the prejudice of the appellant." See also State v. Barnes, 274 Mo. 625, l. c. 632, 204 S. W. 267.

The court in speaking of a similar instruction said: "It is nothing more than an affirmative declaration of the power possessed by the jury in determining the credibility of witnesses." [State v. Williams, 309 Mo. 155, 274 S. W. 427; State v. Brown, 270 S. W. 275; Eby v. Wilson, 289 S. W. 645; State v. Hayes, 262 S. W. 1034, l. c. 1037.]

The following instruction given by the court sufficiently covered the subject of the credibility of witnesses:

"You are the sole judges of the credibility of the witnesses and of the value and weight to be given to their testimony. In determining such credibility and weight, you may take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, the probability or improbability of his statements, as well as all the facts and circumstances given in evidence."

There are other assignments of error in the motion for new trial, but we find that they are either duplicates of those we have considered or so indefinite that they do not comply with Section 4079, Laws 1925, page 198. The defendant also filed a motion in arrest of judgment. In this case we have treated it as a part of the motion for new trial. Motions in arrest of judgment were abolished by Section 4080, Laws 1925, page 198, and should not be filed in criminal cases.

It results that the judgment of the trial court should be and it is affirmed. All concur.