Anna Lee DOUGLAS, Plaintiff-Respondent,

v.

Ed FARROW, Defendant-Appellant.

No. 47438.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

Adolph K. Schwartz, St. Louis, Chapman, Schwartz & Chapman, St. Louis, of counsel, for appellant.

Gerhard and Padberg, St. Louis, for respondent.

DALTON, Judge.

Action for damages for personal injuries sustained by plaintiff, a married woman and a passenger in an automobile operated by her father, when it collided with the rear of an automobile that had stopped in traffic ahead of it at an intersection, and it was struck in the rear by an automobile that was following it. The action is against the operators of the two automobiles. Verdict and judgment were for plaintiff for $15,000 against defendant Farrow (plaintiff's father) and defendant Kramer, the operator of the automobile that was following. Only defendant Farrow has appealed.

The cause was submitted against defendant Farrow on primary negligence in permitting his automobile to overtake and collide with the rear-end of the Lammers automobile. The first assignment presented on appeal is that the court erred in failing to direct a verdict for defendant Farrow at the close of all the evidence. The vital issue is whether there was substantial evidence to show that the Farrow automobile in which plaintiff was riding struck the automobile ahead of it before it was itself hit in the rear and knocked into the automobile ahead of it. Appellant concedes that the Kramer automobile struck the Farrow automobile and that there was a collision between the Farrow and Lammers vehicles. We shall state the evidence in a light most favorable to plaintiff and disregard defendants' evidence unless it aids the plaintiff's case or unless a statement of it is necessary to a better understanding of the issues presented. Evidence bearing upon the credibility, weight and value of plaintiff's personal testimony will be reviewed when ruling the specific issues presented for consideration. We shall not review the evidence concerning the extent of plaintiff's injuries, since no issue of excessiveness is presented. It is sufficient to say that plaintiff's evidence tends to show that she sustained a neck and back injury, including a herniated intervertebral disc; and that the injuries from which she suffers were caused by the mentioned collisions.

We shall also omit plaintiff's personal testimony about the occurrence, until after we have reviewed other evidence favorable to her, because it is appellant's theory that the Farrow car had completely stopped and did not collide with the Lammers car until after it was hit in the rear with great force by the Kramer automobile; and that the only evidence upon which plaintiff's cause

could have been submitted against defendant Farrow was the testimony of plaintiff herself, which testimony the appellant contends "cannot be considered to be *substantial* evidence * * * because her testimony as to this accident is absolutely false and she admitted to perjury concerning the same." Appellant insists that the verdict should be set aside because it was procured by false or perjured testimony.

Plaintiff and her husband resided near her father's residence, near Potosi, Missouri, and, as stated, she was riding in the front seat of his 1954 Buick Roadmaster automobile on a trip with him, intending to visit relatives in St. Louis, when she was injured. The collisions occurred about 4:30 p. m. January 7, 1957, on Gravois Road, near Weber Road, in the City of St. Louis. At least five automobiles were involved, all were eastbound and traveling in the inside or left lane of the three eastbound lanes. An unidentified eastbound automobile had stopped in this lane, signaling for a left turn into a driveway. At that time it was being followed by the Zinzer, Lammers, Farrow and Kramer automobiles, in that order, and what happened, after the first automobile stopped, was referred to by State Highway Patrolman Upton as "a series of rear-end collisions." Neither Zinzer nor Lammers struck the automobile ahead of him prior to the collisions occurring to the rear and they all awaited the arrival of a State Highway Patrolman. The patrolman interviewed the drivers of each of the automobiles. He reviewed his report without objection at the trial. Zinzer said: "There were two cars ahead of me, and the first car was making a left turn, so I had to stop behind, and the guy behind me stopped, and then all of a sudden somebody plowed into him and pushed him into me." Lammers said: "The first car was standing still, and I noticed it, and I can't say whether I was fully stopped, and just about that quick, bang, bang, I was hit in the rear." Farrow (defendant-appellant) said: "The guy in front stopped, and I bumped him,

and then the fellow behind hit me." Kramer said: "I was proceeding down the street at normal speed, and cars in front of me came to an immediate stop, and I put my brakes on clear to the floorboard, and that's about it." Kramer said he was driving 30 miles per hour and admitted colliding with the Farrow car. No one was arrested, but plaintiff was taken to a hospital.

The "largest portion" of the damage to defendant Farrow's car was on the front end, including the front bumper face bar, front bumper guards and back bars, the grille, the upper bar on the right and left grille extension, the radiator support, front fender skirting, molding and hood. The left front fender had to be straightened and the "front end" aligned. Concerning his car, defendant Farrow said: "The bumpers was torn off, the grille was torn off, the fender and the lights." At the rear, "the fender was tore out like that and the bumper and I believe some of the lights." Other evidence showed certain damage to the transmission and that the rear bumper and the tailpipe had to be replaced and the left rear panel had to be straightened.

Defendant Farrow, age 77, a witness for defendants, testified: "Beginning, we was all driving along about forty miles per hour, we gradually slowed down." Traffic conditions were not too bad and he was traveling "not very fast", when he noticed the Lammers car stopping. Farrow was "not too far behind him." "We were all driving close * * * we wasn't very far apart." He didn't think it was 15 feet, but believed it was closer. Before "Lammers and the guy in front slowed down," Farrow was driving "closer than fifteen feet to Lammers'" car. He was then driving less than 20 miles per hour, perhaps less than 10 miles per hour. He didn't give the patrolman a statement ("I say he come and took it down"). He could not say that he was asked how the accident happened, but he denied that he said he hit Lammers first. He said he had come to a complete

stop without hitting Lammers; that he had good brakes and had his foot on the brake, when he was hit by Kramer and pushed into collision with the Lammers car. Farrow said his car did not skid, that his taillights were working perfectly before the collision and would light up if you stepped on the brake. The front and back ends of the Lammers car were badly damaged and the "bumpers were pushed kind of into the body and back." It was not repaired by the owner, but was traded in.

Defendant Kramer (plaintiff's witness), traveling behind the Farrow car, was driving a 1955 Buick in perfect condition. The weather was clear, no rain or snow, and he was driving approximately 50 feet behind the Farrow car. It was proceeding in a normal manner, both cars traveling at the same pace, 28 to 30 miles per hour, and then all of a sudden it (the Farrow car) came to an immediate halt and Kramer "noticed that there was emergency conditions going on." The rear-end of the Farrow car was in an "upward attitude and coming back in a bounce, the rear bounced." Its bumper level was higher than normal and it was coming back toward him. This indicated to him that the Farrow car was in a collision ahead. He was then in about 20 feet of the Farrow car and had his brakes fully applied. His car slid approximately eight feet and was already skidding when he saw the Farrow car "with its rear-end in the air." He had reduced his speed to 20 miles per hour and had applied his brakes "at the instant he saw the Farrow car bouncing backward." He admitted he knew that, when brakes are applied, the front end of a car goes down and the rear-end comes up, but he didn't see any taillights go on on the Farrow car. While he hit the Farrow car, he didn't think he could have knocked it into the car ahead. The only damage he observed to the rear of the Farrow car was two scratches on the rear bumper and the broken glass in the left back-up light. He did notice extensive damage to the front end of the Farrow car.

We shall not stop to determine whether the facts hereinbefore reviewed and the reasonably favorable inferences to be drawn therefrom are entirely adequate to sustain the verdict of the jury, but shall proceed to review plaintiff's own testimony, which appellant insists is false and perjured. Plaintiff testified that, as her father's car was proceeding east in traffic in the eastbound lane, next to the center line of Gravois Avenue, several cars up ahead stopped. Her father, not noticing the Lammers car stopping immediately in front of him, collided with it and the Kramer car behind him collided with his car and she was thrown forward and backward in the seat and was injured. She said: "I noticed the car in front of dad being stopped, and I glanced to see if he had noticed it, and it seemed he was glancing out to the left, and I said, 'Dad, dad, watch it.'" He immediately applied the brakes, but the front of his car struck the center rear of the Lammers car. Only a few seconds later the Kramer car struck the rear of the Farrow car. She didn't notice the second jolt like she did the first, but she was made dizzy and numb and her back was hurting and she was rubbing the back of her head. She saw the patrolman talking to the people and taking notes. Her father talked to Mr. Lammers and then told her, "Don't say anything. The fellow in the back hit me." A day or two after the collision she told her father, "Dad, you know I know that you did hit the other car, but I don't mind lying for you, but I will not swear a lie for nobody." She and her father thereafter employed the same attorney and each instituted a suit for damages against Kramer. Both of these cases were subsequently dismissed. It clearly appears that until the present action was instituted, plaintiff had always said she was injured when the car in which she was riding was struck from the rear by the Kramer car.

The impeaching evidence, much of which was fully admitted by plaintiff when testifying in this case, includes the records of

St. Mary's Hospital which show "relevant history * * * patient * * * riding in car, struck from behind." The discharge summary in the same record shows, "riding in car struck from behind." She told the same story to her attorney and the same story appeared in the petition filed in her first suit, to wit, that the automobile in which she was riding was struck from the rear and driven into the automobile ahead. The same story appears from her testimony in the depositions taken in the first suit she filed. She also told Dr. Frank A. Palazzo, who operated on her back, that she was in an automobile accident "at which time she was struck from behind by another vehicle." Her testimony was further impeached in numerous other respects. This impeachment covers almost the entire course of her dealings with her former attorney. Other evidence offered for impeachment purposes, including the records of her regular physician whom she saw on January 9, 1957, and the records of Dr. Palazzo, was excluded by the court.

■ When plaintiff's deposition was taken in the first case, she denied that she had ever had any back trouble before the collision in question or any trouble with her back in her whole life. She now admits that she has had "awful backaches" for more than 12 years, with almost continuous medical attention therefor, but now says it was nothing out of the ordinary and was due to female trouble and weakness. She also admits that she lied in her deposition concerning the facts attending the automobile collisions. Her explanation is that she was under the impression she was protecting her father at that time, and was in his presence part of the time. On the basis of the foregoing facts, appellant insists that her testimony is inherently unbelievable and worthless; that it is not substantial; and that no case was made for the jury. Appellant says that plaintiff's testimony that the Farrow car first struck the car ahead is completely false; that "only the admitted perjured testimony" of plaintiff herself supports the verdict; and that, "if the perjured testimony were eliminated, there would be no substantial evidence to support a verdict in favor of plaintiff." The record does not support appellant's contention. Whether plaintiff testified falsely at the trial, or when her deposition was taken, was for the jury to determine.

■ This is an action at law. The credibility, weight and value of the oral testimony was in the first instance for the jury. Hughes v. Aetna Ins. Co., Mo.Sup., 261 S.W.2d 942, 952(14–18). We find nothing inherently false, impossible or unbelievable about plaintiff's testimony as given at the trial, to wit, that her father, under the admitted circumstances, drove his car into collision with the rear of the Lammers automobile prior to the time of the Kramer-Farrow collision. In fact, her testimony in this case is supported in numerous material respects by the testimony of the State Highway Patrolman concerning the admission against interest by defendant Farrow, by the speed and closeness of the automobiles to each other, by the evidence concerning the parts of the Farrow automobile most seriously damaged, by various portions of the testimony of both defendant Kramer and defendant Farrow, and by the favorable inferences that could be drawn from all the evidence. If defendant Farrow was completely stopped and he had his foot on the brake, could his car have been driven into the car ahead with a force sufficient to create the damage shown to the front of his automobile and the rear of the automobile ahead? Or, why did the Farrow car bounce back toward Kramer before he collided with it, if it had not already struck the Lammers car, and why didn't the taillights on Farrow's car light up? Whether the testimony of plaintiff in the trial of this cause was true or false was for the jury in view of all of the admissions of plaintiff and the conflicting and impeaching evidence shown by the record. McNatt v. Wabash R. Co., 341 Mo. 516, 108 S.W.2d 33, 39(6); Reeves v. Thompson, 357 Mo. 847, 211 S.W.2d 23, 28(7); Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015,

1019; Schonlau v. Terminal R. Ass'n, 357 Mo. 1108, 212 S.W.2d 420, 423; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 716. We need not determine whether the evidence, absent the testimony of plaintiff, would have been substantial and sufficient to make a submissible case. The evidence reviewed is substantial, competent and sufficient to sustain the verdict on the theory upon which the cause was submitted. Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S. W.2d 68, 70(3); Gooch v. Lake, Mo.Sup., 327 S.W.2d 132, 134; Chiodini v. Terminal R. Ass'n of St. Louis, Mo.App., 287 S.W.2d 357, 361. Appellant cites: Watkins v. Bird-Sykes-Bunker Co., 322 Mo. 830, 16 S. W.2d 38, 43; Warner v. St. Louis & M. R.R. Co., 178 Mo. 125, 77 S.W. 67, 69; Graney v. St. Louis, I. M. & S. Ry. Co., 157 Mo. 666, 57 S.W. 276, 279, 50 L.R.A. 153; Carson v. Hagist, Mo.App., 143 S.W.2d 355; and other cases. These cases do not aid appellant under the facts of this case. The court did not err in overruling defendant Farrow's motion for a directed verdict.

Appellant further contends that the court erred in refusing to grant a new trial because of the false and perjured testimony of plaintiff-respondent in the trial of this cause. Appellant refers to the duty of the trial court to grant a new trial when perjury or mistake has been committed by a witness which has resulted in an improper verdict. Appellant cites: Section 510.330 RSMo 1949, V.A.M.S.; Section 1002 RSMo 1929; Pitzman's Co. of Surveyors & Engineers v. Bixby and Smith, 338 Mo. 1078, 93 S.W.2d 920, 922(2); and Heidland v. Sears, Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795, 801(5). Appellant again argues that the verdict in this case was obtained by false and perjured testimony. As stated, whether plaintiff testified falsely in the trial of this cause or when she gave her deposition testimony was for the jury. We may not determine that issue as a matter of law. Under the evidence in this case, the cause was properly submitted to the jury for the jury to determine whether, in view of all the evidence, plaintiff's testimony in the trial of this case was false or true. The assignment is overruled.

■ Error is assigned on the exclusion of certain documents (identified by Dr. Scott and Dr. Palazzo) which contained admissions against plaintiff's interest. Dr. Elwin P. Scott, a physician and surgeon, a witness for plaintiff, saw plaintiff at this office on January 9, 1957, two days after she was injured. He said he brought his records, back for five or six years, into court with him; and that the three-by-five cards he exhibited were his "records" concerning plaintiff. "I make them partially, and my secretary helps write them out." The second card is for January 9, 1957, when she started with him after the accident. He said of the writing on the back of the card, "that is what my nurse wrote. She gets the history. It isn't my history." An objection that what a nurse wrote on the back of the card was hearsay and would not be covered by the Uniform Business Records As Evidence Act was sustained. Defendant Farrow's counsel then offered the card. On its back in the same handwriting the following appeared: "January 7, 1957, 4:30 p. m., Gravois and Webster Road * * * I was in the front seat of my father's car. We were stopped in the left turn lane * * * and the car in front of us was stopped. The car behind us was driving too fast to stop, and hit our car, pushing it into the car in front of us." The same objection was again sustained. Counsel then proved by the witness, on further cross-examination, that this card was part of the regular records of his office, kept in the regular course of his business; that "this is what the nurse wrote down; it is not my writing at all"; and that the card had been a part of his "records ever since this accident." The card was not again offered and it was not received in evidence, although the witness had previously used the card in connection

with his testimony. No part of the card had been offered in evidence by plaintiff.

There was no evidence that plaintiff's father was present when plaintiff saw Dr. Scott, but appellant insists that the card constituted material-impeaching evidence. The court did not err in excluding the exhibit. No real effort had been made to show full compliance with the provisions of Section 490.680 RSMo 1949, V.A.M.S., when the exhibit was excluded. It was not re-offered. No abuse of the court's discretion appears from the trial court's ruling. State v. Winn, Mo.Sup., 324 S.W.2d 637, 642(4); Rossomanno v. Laclede Cab Co., Mo.Sup., 328 S.W.2d 677, 683(14).

Dr. Frank A. Palazzo, a physician specializing in neurosurgery, first saw plaintiff, according to his records, on March 19, 1957. He testified: "She mentioned that she had been in an auto accident at which time she was struck from behind by another vehicle, two or three weeks prior to her coming to my office." He had in his possession a document which he said was his original medical report concerning plaintiff's injuries. It was a letter, on his stationery, addressed to respondent's present counsel, dated February 20, 1958, and signed by the witness. He referred to the letter as "this record." He said: "This is the original record. * * * Anything I might have in the office would be a copy of this." He had not had time to pick up his own copy. The witness agreed that he had been testifying from the document the entire time he had been on the stand, "plus my memory of her condition." Defendants made the following offer "as an admission against interest": "I offer to prove that if permitted to ask this witness he would read the following from the report which he has just identified. * * * 'I first examined Mrs. Anna Lee Douglas on March 19, 1957, at the request of Doctor Elwin P. Scott. At that time she stated that she was struck from behind, two or three weeks prior to her visit to my office, by another car as her car was slowing for a line of others be-

hind a left-turning vehicle ahead, resulting in the jamming of all three cars ahead together.'" An objection to the offer was sustained.

Appellant now contends the offer was admissible on the theory that when a portion of a record has been read into evidence, the opposing party is entitled to read the other portions of the same record. Lockhart v. St. Louis Pub. Serv. Co., Mo. Sup., 318 S.W.2d 177. Appellant also contends the document was competent and admissible as a regular business record under Section 490.680, supra.

The letter was never marked or offered in evidence as an exhibit. No portion of it had been read in evidence, although the witness had testified to substantially the same facts on direct examination. The offer was to have the witness read a part of the letter as an admission. He had already testified to the fact from memory or by use of the letter.

■■ The assignment must be overruled. A party is bound on appeal by the position taken in the trial court. Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, 104(9–11). Neither of the grounds now urged was mentioned at the time the offer was excluded, nor is either ground valid. No part of the letter had been read to the jury and the letter was not shown to be a business record within the provisions of Section 490.680, supra. The letter was written almost a year after the interview. No error appears.

We do not reach respondent's suggestion that, in view of the impeaching evidence already in the record (listed under seven main headings) and plaintiff's admissions concerning the same, the statements in Dr. Scott's card and Dr. Palazzo's letter, if construed as admissions against interest, were "purely cumulative and properly excluded" as within the court's discretion; and that in no event was their exclusion prejudicial to appellant, or reversible error.

Appellant assigns error on the refusal of Instruction "A", offered by defendant Farrow on the credibility of witnesses. The instruction concluded with the following sentence: "It is within your province to believe or disbelieve the testimony of any witness, in whole or in part, as you may find the same to be true or false in view of all the facts and circumstances in evidence before you." The court gave defendant Kramer's instruction on the credibility of witnesses, but appellant insists that it "significantly omits any reference to false testimony." Appellant cites Rossomanno v. Laclede Cab Co., supra, and State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, and insists that plaintiff's false testimony concerning "how the accident happened," her prior back condition and her relationship with her former attorney presented the paramount issues in the case.

Instruction "A" was not what is usually referred to as a falsus in uno, falsus in omnibus instruction. State v. Butler, Mo. Sup., 310 S.W.2d 952, 955. In fact it was not materially different from Instruction No. 7 given at the request of defendant Kramer, although the words "true or false," were not used in Instruction No. 7. The matter was within the sound discretion of the trial court. No abuse of discretion appears. State v. Caviness, 326 Mo. 992, 33 S.W.2d 940, 943(9–10); Rossomanno v. Laclede Cab Co., supra, 328 S.W.2d 677, 680(2).

Appellant's final assignment is that "the court erred in refusing to grant a new trial because of the cumulative, prejudicial effect of the various errors." Appellant reargues the prior assignments, all of which have now been ruled adversely to appellant, and insists that the judgment be reversed because of the prejudicial effect of these errors and plaintiff's false testimony. Appellant cites: Faught v. Washam, Mo.Sup., 329 S.W.2d 588, 604 and Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272,

275. These cases are not applicable here. The assignment is overruled.

The judgment is affirmed.

All concur.