**STATE of Missouri, Respondent,**

v.

**Samuel J. COOK, Appellant.**

**No. 55399.**

Supreme Court of Missouri, Division No. 1.

March 8, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

J. E. Sigoloff, St. Louis, for appellant.

HOUSER, Commissioner.

Samuel J. Cook, charged under the Second Offender Act with a prior felony and with assault with intent to do great bodily harm with malice under § 559.180,[1] was found guilty of the latter charge by a jury and was found guilty of the prior felony by the trial judge. The court fixed his sentence at 15 years' imprisonment. On appeal he is represented by the same court-appointed counsel who defended him in the trial court.

Questions as to the sufficency of the information, identification evidence and an instruction are raised on this appeal. A further question involves accused's right to have the jury, rather than the judge, fix the punishment, appellant claiming that the evidence was insufficient to sustain the court's finding upon the basis of which the Second Offender Act was invoked.

I. The Information

■ The first question is whether the failure of the State to state the year in which the assault occurred (the information merely alleged that appellant made the assault "on the 23rd day of May") was sufficient or whether the information was thereby rendered fatally defective. Time is not of the essence of the offense of assault with intent to do great bodily harm with malice, and because of the statute of jeofails and the applicable rule of this Court the information is not to be deemed invalid and the judgment of conviction is not to be reversed for this omission.[2]

1. All section references are to RSMo 1969, V.A.M.S.

2. § 545.030 and Criminal Rule 24.11, V.A.M.R., provide that no information shall be deemed invalid and that the judgment or other proceedings thereon shall not be stayed, arrested or in any manner affected for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense, or for stating the time imperfectly.

Citing Ex Parte Sydnor, 222 Mo.App. 798, 10 S.W.2d 63, appellant argues that the failure to allege the year in which the alleged offense took place renders the information fatally defective because it does not establish that the offense occurred within three years of the date of filing the information.[3] In Ex Parte Sydnor the St. Louis Court of Appeals held that an information must always state that the crime was committed within the period of the statute of limitations, and discharged the petitioner from custody in a habeas corpus proceeding. Ex Parte Sydnor, however, was specifically overruled by the Supreme Court en banc in Honey v. Kaiser, Warden, 352 Mo. 1120, 181 S.W.2d 492, for the reason that the decision failed to give effect to our statute of jeofails (now § 545.030 [2]). See State v. Caviness, 326 Mo. 992, 33 S.W.2d 940; State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1034; State v. Fields, 262 Mo. 158, 170 S.W. 1132, 1134 [2]; State v. Stumbo, 26 Mo. 306, and State v. Pratt, 98 Mo. 482, 11 S.W. 977; 42 C.J.S. Indictments and Informations, § 124, p. 1006.

 In his brief appellant also claims that the omission violates his constitutional rights, under Article I, §§ 10 and 17 of the state constitution, V.A.M.S. and under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, but he does not enlarge upon this general claim, fails to suggest in what respect his constitutional rights have been infringed, and cites no authorities in support of his claim. It is not the duty or function of this Court to construct a constitutional defense for appellant.

## II. The Identification Evidence

 The next question is whether the evidence established accused's connection with the crime beyond a reasonable doubt, appellant contending that the evidence identifying appellant as the perpetrator of the assault was insufficient as a matter of law.

The specific charge was assault upon Gus Lombardo with intent to do great bodily harm with malice, by shooting him with a pistol. Lombardo was shot in the right elbow after having been served as a customer at a barbecue stand. Lombardo testified as follows: There was "another person walking around" in the place while Lombardo was purchasing a slab of ribs. He was a man who had on a red shirt and an orange and brown sweater and a dark pair of trousers. Lombardo pointed appellant out during the trial as the man he saw wearing the red shirt and orange and brown sweater. Lombardo had never seen the man before. There was a new Mercury vapor light—a street light—outside the barbecue stand and the lighting conditions outside were good. When Lombardo walked out of the place he saw the accused, the only man on the street at the time (about 2 a. m.), wearing the above-described clothes. Cook was "standing there straddle-legged," with his legs apart and his arms crossed, with a pistol in his right hand. Cook said, "Come here, I want to talk to you * * * Give me what you got." Lombardo turned around, started back into the door to the barbecue stand, tripped and while Lombardo was falling to the ground Cook took aim and shot Lombardo in the right elbow. On the question of opportunity to observe Cook, Lombardo testified that it took about ten minutes after ordering the food before it was served to him; that during that time Cook was walking back and forth in the place, a distance of from 3–5 feet away from Lombardo; that the man was 20 or 21 years old. Appellant stresses the following cross-examination: "Q Did he have any unusual facial characteristics? A I didn't pay too much attention. Q. So actually you are not identifying him because of his face? A Well, more so by the clothes. Q You mean the clothes is what you are basing your identification on? A Partly. Q Mostly, or 'more so,' you said, isn't that correct? A Yes, sir. Q In

3. The statute of limitations for assault with intent to do great bodily harm with malice is three years. § 541.200.

other words, if you didn't have the clothes to base your identification on you would not be able to identify him? A I think I would. Q You are not sure, though? A All I know is, I seen that gun. Q All you saw was the gun? A Yes, sir. Q So really, you can't identify this man except from the clothes? A From the clothes, yes, sir."

Earl McCrary, owner of the barbecue stand, testified that Lombardo ordered a slab of ribs; that there was a fellow in the store wearing an orange buff striped jersey and dark pants, with a white or red shirt under the sweater; that he had seen the man before; that the man who was walking around the store was the defendant Cook seated in the courtroom; that he knew Cook by face, having seen him around the store previously; that after Lombardo got his ribs and was leaving, McCrary walked with Lombardo toward the door, talking with him; that McCrary was standing by the window when Lombardo finally went out of the store; that as Lombardo was going out Cook, the one wearing the orange and brown striped sweater, said, "This is it" ; that Lombardo said "I ain't got nothing" and turned to reenter the store. McCrary saw fire come from the gun. McCrary asked Lombardo if he was hit and after receiving an affirmative answer McCrary got a pistol out of his own pocket and shot at the retreating man. McCrary did not know whether he hit the man, who kept going. This exchange took place: "Q Mr. McCrary, is there any question in your mind that the man sitting over here, Mr. Cook, is the man who shot Gus Lombardo? A No; he is the man. Q Is your identification based just on the orange and brown * * * sweater that he was wearing? A No; I am positive I seen him out there. Q Could you identify him by his face? A Yes. Q Mr. McCrary, I will show you that which is marked State's Exhibit No. 3; can you identify Exhibit No. 3? A. That is the jacket Q That is the jacket he had on at the time? A Yes. Q For the record, when you say 'he,' you mean Mr. Cook? A I

mean Mr. Cook, yes." On cross-examination Mr. McCrary testified that he had seen Cook "Up and down Vandeventer" and around there, and the following transpired: "Q Now, are you identifying him based upon the clothes that were shown you, rather than on his facial characteristics? A By his face, he had a goatee on that night, a beard; he was bareheaded, and his hair wasn't short, and I wouldn't call it real long, but it wasn't short. Q In other words the person you saw had a goatee on? A One of them beards— Q (Interrupting) Yes, a goatee? A Yes. Q He doesn't have one now? Mr. Frank: Just a minute, will you move over—Q (By Mr. Sigoloff, interrupting) Oh, he does. I am sorry. Are you basing it upon the goatee? A No, I base it on because I seen him."

Detective Robert LaGrand, patroling the area with another officer, heard two shots fired, went to the barbecue stand, found Lombardo who was wounded. Lombardo gave the detective a description of the man who shot him. The detective's partner went to the patrol car and "put out the description." The detective saw Cook some time that morning. Cook was wearing a red shirt, dark trousers and dark shoes. The T-shirt had fresh blood on it and there was a hole in the shirt.

Police Officer Charles Kerlagon testified that an all-channel broadcast came out about 2 o'clock on the morning in question; that he took into custody a negro male named Samuel Cook, who had been shot; that he had on a dark pair of trousers, a red jersey on top of a T-shirt; that on a cot nearby there was an orange and brown striped sweater. He identified State's Exhibit No. 2 as the T-shirt and No. 3 as the sweater.

The foregoing evidence constitutes substantial evidence identifying appellant as the perpetrator of the crime, from which the jury could reasonably have found, beyond a reasonable doubt, that Samuel J. Cook assaulted Lombardo with intent to do

great bodily harm with malice by firing a pistol at and striking him.

## II. Instruction No. 3

■ Instruction No. 3 was intended to submit assault with intent to do great bodily harm without malice aforethought. By inadvertence the introductory paragraph mistakenly employed the word "with" instead of "without," as follows: "If you find the defendant, Samuel J. Cook, not guilty of an assault with intent to do great bodily harm with malice aforethought, under the foregoing instructions, then you will consider whether or not, under all the facts and circumstances in evidence, in this case, the defendant is guilty of assault with intent to do great bodily harm with malice aforethought."

Appellant contends that this does not make good sense; that it would only confuse the jury, and that it deprived him of his right to have the jury instructed on the lesser included offense (felonious assault without malice) under § 559.190. This question was not properly preserved for appellate review, but if it had been so preserved it would have been deemed without merit. This for the reason that any confusion which may have thus been engendered would have been quickly erased by a cursory reading of the rest of the instruction which, in three different places in the second paragraph, made it perfectly clear that the court was instructing on felonious assault *without* malice, viz.: "Bearing in mind the definitions of the words 'wilfully,' 'on purpose,' 'malice aforethought' and 'feloniously,' heretofore given to you, you are instructed that if you believe and find from the evidence, beyond a reasonable doubt, that an assault was made by the defendant upon Gus Lombardo with an intent to do great bodily harm, if you so find, but that it was made without malice aforethought, as that term has been defined, then you will find the defendant guilty of assault with intent to do greatly bodily harm without malice aforethought;

and unless you find the facts to be, you will acquit the defendant of the charge of assault with intent to do great bodily harm without malice aforethought."

## IV. "Sam Cook" versus "Samuel J. Cook"

The sufficiency of the evidence to support the trial judge's finding "that the defendant has been formerly convicted of a felony, and has been sentenced therefor, and duly imprisoned and discharged therefrom" is challenged. The State's proof consisted of (1) the deputy circuit clerk for criminal causes reading the entire entry of Volume 16 of the Permanent Record Book of Division Number 16 showing that on March 1, 1967 in Case No. 2288-0 in the Circuit Court of the City of St. Louis, Division No. 16, *Sam Cook* pleaded guilty to the crime of attempted robbery first degree by means of a dangerous and deadly weapon and was committed to the Department of Corrections for four years; (2) a "Certified Transcript of Serial Record" issued by the Department of Corrections showing that *Sam Cook* received that sentence in that court on that date; that he was received by the Department of Corrections on July 25, 1967 and was discharged by commutation of sentence on April 1, 1969. This transcript is certified by the Director of the Division of Classification and Assignment, who certified that the original files and records of persons committed to the Missouri Department of Corrections were in his custody as such officer, and that the transcript was a true and correct copy of the record of *Sam Cook* as shown by the record books of that division. The signature of the director was subscribed and sworn to before a notary public, whose signature, commission expiration and seal of office appear in proper form.

If Samuel J. Cook is one and the same person as Sam Cook the foregoing evidence would comply with § 556.280 and with the requirement that in order to invoke the Second Offender Act the State

must prove conviction, sentence and subsequent placement on probation, parole, fine or imprisonment, and that the trial court shall recite its finding, a subject recently reviewed by the court en banc in State v. Blackwell, Mo., 459 S.W.2d 268, 271, 272. Appellant, however, claims that by reason of the discrepancy in names ("Sam Cook" instead of "Samuel J. Cook"), the failure to identify accused with the book record of conviction (by comparing birth dates or other identifying information), and the failure of proof of discharge or service of sentence by "Sam Cook," the evidence is insufficient to prove beyond a reasonable doubt that the accused Samuel J. Cook is the same person as the defendant in Case No. 2288–0 or that he was ever discharged from that sentence.

The last claim is refuted by the Certified Transcript of Serial Record of Sam Cook, from which we quote: "Discharged Commutation of Sentence 4–1–69, MSP."

■■■ Identity of names is prima facie evidence sufficient to establish the accused's identification for the purpose of showing a prior conviction under the Second Offender Act. See the many cases so holding, collected in Missouri Digest, Criminal Law, Key Number 1202(3). "Sam Cook" is not identical with "Samuel J. Cook" but the difference between the two names is not significant. We notice judicially that "Sam" is an abbreviation, contraction or diminutive form of "Samuel," and we reannounce the principle that "[g]enerally, a middle name has little, if any, legal significance." State v. Witt, Mo., 371 S.W.2d 215, 220. In that case the showing of a conviction of Jack Witt and a penitentiary record of Jackie Dean Witt, in a prosecution of Jack Gene Witt, was upheld. And see State v. Hands, Mo., 260 S.W.2d 14, 18, in which Dalton, J. cited three cases for the proposition that the middle name of an individual forms no part of the Christian name. In that case the admission of records showing prior convictions of Alonzo Hands was upheld in the prosecution of Alonzo Maurice Hands. In cases of partial and not complete identity of names, where the evidence of previous conviction of a person with a similar but not identical name has been upheld, there is always present some additional evidence or factor matching the accused with the person previously convicted. For instance, State v. Baugh, Mo., 323 S.W.2d 685, in which defendant's full correct name was Ray Leo Baugh. The copy of the judgment on which the State relied to prove a prior felony named *Roy Lee* Baugh and the prison record referred to *Roy* Leo Baugh. In addition to the similarity of names the following factors were present: Twice during the trial defendant was referred to in the evidence as "Roy." A police officer testified that when defendant was questioned about his prior record he made admissions which fixed the time and place of his conviction, the offense and the punishment assessed at that shown in the State's exhibits. The record also contained a detailed description of the characteristics of the person previously convicted and when the prosecutor read the description in his opening statement and argued that it left no doubt as to the man's prior record, counsel for Baugh did not challenge or object to the argument. In State v. Martin, Mo., 395 S.W.2d 97, in which the admission of a copy of the sentencing of Carl Martin was upheld in the prosecution of Carl Alda Martin, and in State v. Collins, Mo., 394 S.W.2d 368 (Jesse Collins v. Jesse Franklin Collins), photographs of the previously convicted person, attached to the file, were available for comparison by the fact finder.

■■■ In the case here for review in addition to the marked similarity of the names the trial judge had before him the Certified Transcript of Serial Record showing a detailed physical description of Sam Cook, as follows: Age 19, height 5 feet 8½ inches, dark brown hair, dark brown eyes, light brown complexion, weight 137 pounds. The record shows that defendant, Samuel

J. Cook, was present in court at all times during the proceedings including the hearing on the question of prior conviction, which was conducted out of the hearing of the jury. The trial judge had every opportunity to compare the man before him with the detailed physical description of the person named in the transcript and it is reasonable to assume that the trial judge made the comparison, and would not have made the implied finding that Samuel J. Cook was one and the same person as Sam Cook if there had been any apparent discrepancy. In this connection see State v. Collins, supra, 394 S.W.2d l. c. 371 [2]. It was therefore unnecessary for the State to rely solely upon the rule of identity or of marked similarity of names, and "it devolved upon him who would deny identity to overcome the presumption. State v. Court, 225 Mo. 609, 125 S.W. 451; State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 334." State v. Hands, supra, 260 S.W.2d l. c. 18 [3]. Neither in the trial court nor in this court has appellant claimed that he is not the Sam Cook who pleaded guilty to the prior crime. A similar observation was made in State v. Witt, supra, 371 S.W.2d l. c. 220 [4] and in State v. Williams, Mo., 382 S.W.2d 597, 600.[5] We find the evidence sufficient to support the trial judge's finding invoking the Second Offender Act.

The judgment of conviction is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

4. "Without suggesting in any way that defendant himself should have taken the stand, he certainly could have produced other evidence to refute this charge if, in fact, he was not the person so sentenced and confined."

5. "The defendant did not offer any evidence that he was not the person named in the court and prison records."