IMPERIAL–YUMA PRODUCTION CREDIT ASSOCIATION, a corporation, Plaintiff and Respondent,

v.

Earl HUNTER and LaVon Hunter, his wife, Defendants and Third Party Plaintiffs and Appellants,

v.

GLS LIVESTOCK MANAGEMENT, INC., a Utah Corporation, and George L. Smith, Third Party Defendants.

No. 16202.

Supreme Court of Utah.

March 26, 1980.

---

Macoy A. McMurray of McMurray, McIntosh, Butler & Nielsen, Salt Lake City, for defendants and third party plaintiffs and appellants.

James M. Dunn of Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for plaintiff and respondent.

Walter R. Ellett, Murray, for third party defendants.

MAUGHAN, Justice:

Defendants seek the reversal of a lower court judgment in plaintiff's favor. We affirm the decision of the trial court, but disallow its award of attorney's fees to plaintiff's counsel. No costs awarded.

This case involves an action by Imperial-Yuma Production Credit Association (Imperial-Yuma) against defendants Earl and LaVon Hunter. The suit sought to recover the amount owing on a promissory note, including costs and attorney's fees.

Near the end of 1973, George L. Smith, head of GLS Livestock Management Company, approached Mr. Hunter about investing in one of the cattle feeding pools operated by GLS. In each pool, a number of investors contributed toward the purchase of cattle and feed, anticipating a profit after the cattle were fattened and sold. Through his accountant, Mr. Hunter arranged to participate in the venture and applied for financing through Imperial-Yuma. The Hunters signed a promissory note and other documents establishing a level line of credit under which they could borrow up to a certain limit. They also signed an authorization for Imperial-Yuma to pay drafts drawn on Earl Hunter which were signed by George L. Smith.

For over a·year, Smith acted as agent for the Hunters, drawing on their account to help pay for cattle, feed, and medicine for their pool, which was given the name Hanalei. In the spring of 1975, the Hanalei pool was liquidated and all proceeds and·credits were applied to the Hunter account. Imperial-Yuma claimed the Hunters owed $5,439.41, in addition to interest and attorney's fees. The trial court, sitting without a jury, awarded plaintiff $5,439.41, interest of $3,696.02, and attorney's fees of $4,000.00.

On appeal, defendants claim the trial court made two basic errors. First, it allowed the Hunters to be charged for several drafts against Earl *H.* Hunter, rather than Earl Hunter. It was shown at trial defendant Hunter has no middle name or initial. Defendant claimed the names were not identical and plaintiff failed to show Earl Hunter and Earl H. Hunter were the same person. As a result, defendants maintain, they should not have been charged with any drafts drawn on Earl H. Hunter.

 Under the facts of this case, we cannot agree with defendants' contentions. Generally, courts give middle names or initials little legal significance.[1] This ap-

1. *State v. Cook*, 463 S.W.2d 863 (Mo.1971); *Williams v. State*, 461 S.W.2d 614 (Tex.Cr.App. 1970); *Langley v. Zurich General Accident & Liability Ins. Co.*, 97 Cal.App. 434, 275 P. 963 (1929).

proach, which is rooted in the common law recognition of only one Christian name, is not without exception,[2] but we are of the opinion it should be followed here. Although several of the drafts charged to the Hunters' account carried the name Earl H. Hunter, several factors allowed the trial court to conclude they were in fact attributable to Earl Hunter: 1) the first name and surname were correct on all the drafts. If the erroneous middle initial is disregarded as legally unimportant, which we think is the correct course in this case, the names on the drafts are identical. Under Utah law, identity of the person is presumed from identity of the name, with the burden of rebuttal on the one disputing the presumption;[3] 2) the name of the cattle pool in which defendants invested, Hanalei, appeared on all drafts charged to defendant. No evidence is found in the record to indicate any others named Hunter were involved in the Hanalei pool.

Defendants argue the insertion of a middle initial made the names different, resulting in a presumption that Earl Hunter and Earl H. Hunter were not the same person. In some situations, the presence of an erroneous middle initial in a name may create such a presumption. But here, given the factors listed above and the fact defendants could have obtained a list of investors in the Hanalei pool to substantiate their concerns about the possible existence of another Earl Hunter, the burden should remain on defendants to rebut the presumption the two names refer to the same person. The cases defendants have cited do not conflict with our holding.[4]

Defendants also maintain Imperial-Yuma failed to comply with defendants' power of attorney by charging their account for Earl H. Hunter drafts. The trial court found Earl Hunter and Earl H. Hunter to be the same person. We affirm that finding.

Based on the evidence in this record, we do not reach the questions whether Imperial-Yuma exceeded its authority in paying Earl H. Hunter drafts or whether plaintiff had the burden of showing defendants benefitted from the proceeds from the drafts.

■ Finally, defendants claim the trial court erred in awarding plaintiff attorney's fees. We agree with defendants and reverse the trial court on this issue. The promissory note which defendants signed with Imperial-Yuma contained an agreement that defendants would pay reasonable attorney's fees and costs required to collect on the note. At trial, plaintiff's counsel testified the fee for his time came to $7,164.00, but he had "made no allocations as between the various aspects of the case in terms of time." If all counsel's time had been spent in collecting on the note, there would be no question about the recoverability of his fees. However, since defendant filed a counterclaim that contained claims different from those related to the note, plaintiff's counsel should have subtracted from his total hours the number spent on the counterclaim. Two recent cases bear on this point. In *Stubbs v. Hemmert*, 567 P.2d 168, 171 (Utah 1977), this Court held attorney's fees could be charged to the opposing party "only if there is a contractual or statutory liability therefor." Counsel in that case was not allowed to recover for the time he spent in defense of a counterclaim. In *Nelson v. Newman*, 583 P.2d 601, 603–04 (Utah 1978), the court cited *Stubbs* in disallowing attorney's fees where counsel could not show how much time he had spent collecting on notes.

Here, although the trial court allowed an attorney's fee of $4,000 "exclusive of the defense of defendants' counterclaim," the court had before it no evidence on which to base its award. We hold the court erred in awarding attorney's fees to plaintiff's coun-

2. *D'Autremont v. Anderson Iron Co.*, 104 Minn. 165, 116 N.W. 357 (1908).

3. *State v. Gorham*, 93 Utah 274, 72 P.2d 656, 662 (1937).

4. Defendant's cases involve situations where initials were substituted for the first names of individuals or where a corporate name was shortened. See *Memorial Hospital v. Woolf*, 86 R.I. 357, 134 A.2d 397 (1957); *McCracken v. Citizens' National Bank of Akron*, 80 Colo. 164, 249 P. 652 (1926); *State v. Johnson*, 293 S.W.2d 907 (Mo.1956); and *Fox v. Grand Union Tea Company*, 236 S.W.2d 561 (Tex.Civ. App.1951).

sel in the absence of a showing of time actually spent collecting on the note.

CROCKETT, C. J., and WILKINS, J., concur.

HALL, Justice (concurring and dissenting):

I concur in affirming the judgment on the note. However, I do not agree that plaintiff is to be denied its contractual right to any attorneys' fee at all simply because the findings of the trial court are inadequate to support its award of $4,000.

I deem it appropriate to remand[1] for the purpose of making further findings of fact as will support what the trial court might thereafter determine to be a reasonable attorneys' fee.

STEWART, J., concurs in the concurring and dissenting opinion of HALL, J.

---

1. Pursuant to Rule 76(a), U.R.C.P.